---

SAME TERM.　　*Before the same Justices.*

## WOODBURN and others *vs.* MOSHER, FOX & SWEATMAN.

An assignment of property in trust for the payment of the debts of the assignor, directed the assignees to take possession of the premises forthwith, and *within convenient time as to them should seem meet*, by public or private sale for the best price that could be procured, to convert the property into money, &c. The assignment also contained a clause authorizing the assignees to ask, demand, sue, &c. and compound and agree for all or any part of the debts due and owing to the assignor, as the assignees should

Woodburn *v.* Mosher.

deem meet. *Held,* that the assignment was fraudulent in law and in fact, and therefore void as against creditors.

In Equity.] This was a creditor's bill, filed to enforce the collection of a judgment in the supreme court, obtained the 27th day of October, 1846, in favor of the complainants against the defendant Dighton Z. Mosher, for $390,69, on a demand due prior to September, 1846. Fox and Sweatman were made defendants to set aside an assignment made to them by the defendant Mosher, on the 8th of September, 1846, by which other debts were preferred, and particularly a debt of $1150, alledged by Mosher to be due to his mother Hannah Mosher, and his sister Clarissa P. Mosher.

The provisions of the assignment, and the facts in the case, are set out in the opinion of the court.

*De Witt C. Bates,* for the plaintiffs.

Monson, J.    By the assignment sought to be set aside, in this suit, Mosher, the assignor, grants, &c. unto Fox and Sweatman, their heirs and assigns, all his lands, tenements, and hereditaments, goods, chattels, merchandise, debts, and every and all sums of money due, owing or belonging unto the said Mosher, and securities taken and obtained for the same, to have and to hold the same, with the appurtenances, to the said Fox and Sweatman, their heirs, executors, administrators and assigns, "upon the special trust, nevertheless, that the said Fox and Sweatman, shall forthwith take possession and seizure of the premises, and within convenient time as to them shall seem meet, by public or private sale for the best price that can be procured, shall convert all and singular the premises into money ; and as soon as possible, collect all and singular the debts and sums aforesaid, and after deducting the costs and charges of the trusts before mentioned, shall pay and apply the moneys arising therefrom, in manner following :" &c.

Does this provision come in conflict with 2 *R. S.* 137, § 1, which says that every conveyance or assignment, &c. of any

Woodburn *v.* Mosher.

estate in lands or in goods, &c. made with the intent to hinder, delay, or defraud creditors, &c. shall be void?

The assignees are to convert the property in a "convenient time as to them shall seem meet." The word "meet" means fit, suitable. (*Webster.*) They shall attend to the business then, when it shall suit their convenience. Perhaps it will not suit their convenience in six months or a year, or even a longer time. In other words, they shall attend to it when they please. But creditors are entitled to have the assigned property converted into money, and applied to the payment of their debts without any unnecessary delay. (9 *Paige,* 406.) In the case cited, the question was not directly upon the assignment, which provided that the property should be sold by the trustee "in such manner, and at such reasonable time as should seem proper to him." But it was a proceeding calling the trustee to account for negligence in the discharge of his duty, and he was held liable for the loss of property sold on credit, although as the court said, "that mode of disposing of the property was probably in accordance with the wishes of the assignors;" and the chancellor also says that the assignment would have been clearly fraudulent if the assignor had in terms directed the assignee to dispose of the property in the manner it was disposed of.

Assignments by debtors in failing circumstances are not favorites in the law. They are tolerated simply in allowing the debtor to give a preference to his creditors; who are not to be hindered or delayed in collecting their demands. The debtor can not make any provision for himself until after all his debts are paid. He can not impose conditions upon his creditors, such as requiring them to give an absolute discharge as a consideration for a partial dividend. And an assignment void in part is void in toto, though there be no fraud in fact intended. (2 *Kent,* 536, note. 6 *Hill,* 438. 2 *Com.* 371. 11 *Wend,* 187.)

If the clause in question authorizing the assignees to discharge their duties whenever it shall suit their pleasure or convenience, may operate to hinder or delay creditors, as it seems plainly to me that it may, then it renders the assignment void. In *Lyons* v. *Platner, (decided by the supreme court in the sixth district,*

Woodburn *v.* Mosher.

*in* 1850, *opinion given by Justice Gray,*) the assignment provided that the assignee should take possession of the assigned property, and with all convenient diligence, and within four months from the date thereof sell and dispose of the same, either at public or private sale, and to such persons and for such prices and upon such terms as he should deem best for the interest of the parties concerned, &c. It was held that this authorized the assignee to sell upon credit, and was therefore void. But if it authorized him to sell on credit, it was limited to four months, and would therefore seem to be less objectionable than the one now under consideration.

The assignment contains the further clause authorizing the assignees "to ask, demand, sue, &c. and compound and agree for all or any part of the debts due and owing to the assignor, as the assignees shall deem meet."

In 11 *Wend.* 203, Sutherland, justice, held that a provision in the assignment, giving the assignee power to compound and agree with all or any of the creditors upon such terms as they shall deem proper, &c. so however, as not to interfere with the order of preference, could not be sustained. In this opinion, he accorded with the chancellor, whose decision was under review in the court of errors. But Senator Tracy did not concur in this opinion, and this point does not appear to have been decided by the court.

In the case before me, Mosher, a merchant, having done business for several years in Sharon, Schoharie Co. "sold out" to Sweatman, a clerk in his store, to whom he was indebted for half a year's wages; and took his notes for the consideration of between "one and three thousand dollars," without security, although Sweatman, as Mosher himself testified, "did not have much property." Mosher served as clerk in the store under Sweatman for a few weeks. Sweatman kept the store open and sold goods during the year. The notes against him ran a year before due. Mosher bought the goods back with Sweatman's own notes. The goods did not amount to as much as M.'s notes or claims on Sweatman. The balance of these notes was assigned with M.'s other effects. On the re-purchase, M. took a note or

notes for the balance due him from Sweatman. A day or two, or a few days after the assignment was made, Fox testified that Sweatman was in the store at the time of the assignment, was a single man and not a man of property, and that the notes of Sweatman to Mosher had never come to his (Fox's) hands. Sweatman then holds his own notes given to Mosher with power to compound for all or any part of them, as to him shall seem meet. He can wait a "convenient time." The "convenient season" to the debtor to pay his debts is apt to be a long time coming. He can wait six years if he please, when his own notes will be barred by the statute of limitations, or he can give an acquittance or discharge short of that period. The first debt directed to be paid by the assignment, is the sum of $1150, to Hannah Mosher the mother and to Clarissa P. Mosher, the sister of the assignor. Mosher states in his testimony that 4 or 5 years before the assignment was made he received $1200 from his father Rodman Mosher, to use without interest as long as Rodman and his wife Hannah and daughter Clarissa lived with him; the assignor, D. F. Mosher, to find them all, except clothing for Clarissa. There was no writing on the subject. His father lived with him till he died, leaving eight children surviving. His mother lived with him till August, 1847, when she went to live with Clarissa, who had got married in July. The money was received at different times from the father in obligations. He boarded his father and mother in sickness and health. His father was a feeble man, and made no will; but directed that the money should be paid to his, the assignor's, *mother,* *after* his death, she having the right to call for it the same as he had during his life-time. Mosher, in his testimony, says he charged fifty dollars for their room. In his answer, which was sworn to, he says that Rodman, before his decease, directed that at his death the said money was to be paid to the said *Hannah and Clarissa* as *their own,* and *for their benefit.* Whatever amount, if any, was justly due from D. Z. Mosher on account of this $1200, alledged by him to have been received from his father, was due to the estate of Rodman Mosher, upon which no letters of administration have as yet been taken out. Any

direction from Rodman to D. Z. Mosher, to pay to Hannah, or to Hannah and Clarissa, unperformed by D. Z. Mosher, could not pass a title as against the creditors of D. Z. Mosher.

I come to the conclusion, therefore, that this assignment is fraudulent in law and in fact, and consequently void as against creditors. Let a decree then be entered to this effect, and that the defendants Fox and Sweatman pay to the complainants, or their solicitor, the amount of complainants' judgment against D. Z. Mosher, and the costs of this suit, out of the funds in their hands received under said assignment; but that the said Fox and Sweatman are not to be personally liable therefor; and in default of said funds, or so far as there shall be a deficiency, that the defendant Mosher be held to be personally liable for the judgment and costs.

Decree accordingly.

---

JEFFERSON GENERAL TERM, July, 1850. *Gridley, Allen, and Hubbard,* Justices.