ROSWELL S. BENEDICT and others, Appellants, v. E. H. HUNT-
INGTON and others, Respondents.

Where the language of an assignment for the benefit of creditors can be abund-
antly satisfied by a construction which will support the instrument, such
construction should be given.

Where such instrument does not in express terms authorize or require an illegal
act to be done by the assignee, the legal inference is, that the assignor did not
intend to authorize any such act.

An assignment authorizing the assignee to forthwith take possession of all the
assigned property, and "*within such convenient time as to him might seem meet,*
by public or private sale, for the best price that can be procured, convert all
and singular the said premises, property and estate, into money," &c., is valid.

APPEAL from a judgment entered at the General Term of
the seventh district upon an order granting a new trial, on
an appeal from judgment on the report of a referee.

The action was brought by the plaintiffs to set aside a vol-
untary assignment made by one George Benham in trust for
his creditors.

*C. G. Judd*, for the appellants.

I. The referee was correct in holding the assignment
fraudulent and void upon its face as against creditors of the
assignor, because:

1. The assignment provides that the assignee, "within
such convenient time as to him may seem meet, by public or
private sale, for the best price that can be procured, shall
convert the assigned property into money." Such provision,
in such an assignment, authorizes the assignee *to sell on credit*,
and consequently renders the assignment void on its face.
(See *Woodburn* v. *Mosher*, 9 Barb., 255; *Murphy* v. *Bell*, 8
How., 468; *Jessup* v. *Hulse*, 21 N. Y., 171; *Brigham* v.
*Tillinghast*, 13 id., 219; *Barney* v. *Griffin*, 2 N. Y., 371;
*Porter* v. *Clark*, 9 id., 152; and *Burdick* v. *Post*, 12 Barb.,
168.)

2. The assignment also provides that the assignee shall
retain a sufficient sum to pay off, satisfy and discharge all

such debts and liabilities as may be due and owing from said Benham, and *on which or for which* the said assignee is, or may be hereafter or become, liable as an indorser or surety in any manner, and to fully indemnify and save harmless the said assignee therefrom, amounting to about $5,000. The assignment also contains other similar provisions. Thus, the assignee, by assuming a liability upon any of Benham's notes after assignment, secures a preference for the debt secured by the note. Thus, the assignee is empowered to make preferences among the creditors. This construction is warranted by the words "*may hereafter or become, &c., in any manner.*"

II. If, however, the referee erred in his views and opinions on this point, if his decision could be sustained upon any of the grounds insisted on before him at the trial, the Supreme Court erred in reversing the judgment and granting a new trial. (*Monroe* v. *Potter*, 22 How., 49, 55, 56; *S. C.*, 34 Barb., 358; 42 Barb., 176.)

III. The order of the Supreme Court reversing the judgment, &c., will be deemed to have been solely upon the question of law, it not being stated therein that it was upon a question of fact. (Code, § 272, as amended in 1860.)

IV. The question of fact was finally settled in the Supreme Court, and there is no exception bringing the question of law into this court.

*M. Brown,* for the respondents.

I. The assignment does not authorize a sale on credit. A fair exercise of the power given does not necessarily operate to hinder and delay creditors, &c., and it is not to be presumed that the power is to be exercised in a fraudulent manner.

The proper inquiry is, does the assignment require or permit, in so many words, an illegal act to be done. If, in the exercise of the discretion conferred, the trustee makes any unnecessary delay, it is an abuse of his power, and he will be answerable to the court. (*Meacham* v. *Stearnes*, 9 Paige, 398; *Whitney* v. *Krows*, 11 Barb., 198.)

The assignment does not authorize the trustee to prefer

creditors.    The terms are fully satisfied by holding that it was intended to provide for all the *then existing* debts and liabilities of the assignor, for which the assignee was liable as indorser or surety.    That the assignment referred to *certain specific* debts, for they are described as amounting to about the sum of $5,000.

The assignment is not fraudulent upon its face, unless it expressly authorizes some illegal act in execution of the trust. The referee erred in presuming a *fraudulent* intent when the language was fairly susceptible of a different interpretation; and it will not be construed as conferring such authority where its language is consistent with an interpretation which makes it legal and valid. (*Kellogg* v. *Stanton*, 11 N. Y., 302.)

POTTER, J.    On the trial before the referee, the question was raised by the plaintiffs that the assignment was void on its face on account of the following provisions contained in it: 1. Authorizing the assignee forthwith to take possession of all the assigned property, "*and within such convenient time as to him may seem meet*, by public or private sale, for the best price that can be procured, shall convert all and singular the said premises, property and estate into money," &c.; 2. A provision that the assignee might retain from the moneys to be realized " a sufficient sum to pay off, satisfy and discharge all such debts and liabilities as may be due and owing from Benham (the assignor), *and on which or for which the said Elisha H. Huntington* (the assignee) *is, or may be hereafter, or become liable as an indorser or surety in any manner*, and to fully indemnify and save harmless the said Elisha H. Huntington therefrom, amounting to about the sum of $5,000; 3. A provision that the assignee pay to one Joel W. Crane, "a sufficient sum to satisfy, pay off, and discharge *all debts and liabilities as may be due and owing from the assignor, and on which or for which the said Joel W. Crane is, or may be hereafter, or become liable as indorser or surety in any manner*, and so as fully to indemnify and save harmless the said Joel W. Crane therefrom, amounting to about $1,500,"

On these grounds the referee held the assignment void on its face as against the plaintiffs, creditors of the assignor. To this decision the defendants excepted. The correctness of this decision is the real question in the case. The exception taken on the trial sufficiently presents the point here, though there was no exception to the referee's report, which gave this construction of the assignment as the ground of his decision.

There has not been an entire uniformity of decisions in the courts upon this and kindred questions arising upon this kind of instruments; but the difference, I think, has been more in giving construction to language, in the slightly varying forms of expression employed in the instrument from which the intent of the assignor is determined, than from any variation in the principle which has been intended to be applied in determining what power the assignor may confer in this character of trusts.

The first ground of objection in this case, is that the language in the power, "*within such convenient time as to him may seem meet,*" to sell, &c., authorizes the assignee to sell on credit. If such is interpreted to be the intent of this assignment, it is void, within the authority of all the cases.

The power conferred in the assignment in this case cannot be distinguished from that of *Woodburn* v. *Mosher*, decided at Special Term, and reported in 9 Barb., 255. The language in this assignment is identical with that. The assignment in that case was held to be void by MUNSON, J., as being in conflict with the provisions of 2 R. S., 137, § 1, which makes void instruments made with intent to hinder, delay or defraud creditors. Another Special Term case, *Murphey* v. *Bell*, reported in 8 How. Pr., 468, the language in the assignment was, "*within such convenient time as to them shall seem meet, and as shall be most conducive to the interests of all parties concerned.*" WELLS, J., held this assignment void, for the same reason, citing *Woodburn* v. *Mosher* as authority. In another Special Term case, *Whitney* v. *Krows*, reported in 11 Barb, 119, HARRIS, J., held that a provision "to sell and dispose of the property upon such *terms* and *conditions* as in their judgment may appear best, &c., and to convert the

same into money," was not to be construed as conferring authority to sell on credit; adding, "that it should not be presumed that the parties intended that the power should be exercised in a fraudulent or unlawful manner." The same construction was given to a like power in a case decided at Special Term, by EDWARDS, J., reported in 7 How. Pr., 414. These cases, apparently in conflict, were decided subsequent to the case, in this court, of *Griffin* v. *Barney* (2 Comst., 365), and they differ from the latter case in this particular; the power to sell on credit, in the two first cited cases, is *implied* from the language used in the assignment; while, in the latter case, the power is expressly given, "to sell for cash, *or upon credit*, or partly for cash and partly upon credit,"— an important distinction. BRONSON, J., who delivered the opinion in the case of *Griffin* v. *Barney*, approves of a remark of the chancellor, in *Meacham* v. *Stearns* (9 Paige, 406), who said, "that creditors were entitled to have the assigned property converted into money, and applied to the payment of their debts, without any unnecessary delay." To the same effect, is the case of *Nicholson* v. *Leavitt* (2 Seld., 510), *Burdick* v. *Post* (12 Barb., 168), and *Porter* v. *Williams* (5 Seld., 142). The next case, in the order of time, is the case of *Kellogg* v. *Slauson* (1 Kern., 302), decided in this court, in 1854, subsequent to the cases above cited. The language by which the authority was conferred, in *this* case, differs from the former cases, and was as follows: "to sell and dispose of the same *upon such terms and conditions as, in their judgment, may appear best, and most for the interest of the parties concerned.*"

It was held that the power to sell on credit was not to be implied from the language employed; that the law will imply, from the use of the words "terms and conditions," that the discretion thereby given to the assignees was only that which the law itself conferred; and, also, that where an instrument does *not*, by an express provision, authorize an illegal act, the legal inference is, that the assignor did not contemplate or intend to authorize one; that case further held, that where the language of an assignment

could be abundantly satisfied by a construction that would
support the instrument, the well settled rule would control,
that a construction must be given which should not defeat
it. And, also, where the authority conferred is general, it
will be deemed to be, and to have been intended to be, with-
in the limits prescribed by law. These liberal and com-
prehensive rules in regard to the construction of these
assignments, thus seem to have been clearly established
and settled in this court. It seems to me they are entirely
sound. It then only remains to make the application of
them to cases as they arise. The various changes of
language, and selection of expression, which are employed
for this purpose, slightly differing from former cases, makes
the labor of interpretation, sometimes, a difficult one.
Keeping in mind, however, the rule that the assignor can
interpose no express authority, nor employ language which
necessarily implies authority that authorizes *delay* in con-
verting the assigned property into money for the immediate
benefit of his creditors; the decision of the case of *Brigham*
v. *Tillinghast* (3 Kern., 215), became a clear exposition and
illustration of this principle. That case authorized the
assignees to convert the property into "money, or *available
means*." This was held void. "Available means" cannot,
in law, be regarded as money or its equivalent. Creditors
are not bound to accept of available means in payment.
Such means necessarily require time, longer or shorter, to be
converted into money. This must create delay. The power
to delay by necessary implication, from the language used,
was, therefore, held to be intended to be conferred.

Next, in chronological order, in this court, followed the
case of *Dunham* v. *Waterman* (in 17 N. Y., 9). In this
case it was the assignment of an insolvent debtor, in trust, to
pay his creditors, all his property, which consisted, in part,
of unfinished machinery and materials in the process of
manufacture. The provision was to apply the proceeds:
First, to pay any such sum or sums of money as they might
find proper and expedient, in and about the management of
the said property, or payment of hands employed or to be

employed in and about the same, or in the business of com-
pleting the manufacture of any of the said property, or
fitting the same for sale, or working up materials, &c., so as
to realize the greatest possible amount of money therefrom,
as in the judgment (of the assignees) should seem most advis-
able.    This, it is seen, is an *express* authority to take the
proceeds of the assigned property, not to pay the creditors,
but, in the discretion of the assignees, to invest the money,
to conduct and carry on a manufacturing business, and in
fitting up the property; and the court say, citing from the
opinion of *Freeborn* v. *Leavitt:* "the debtor cannot, in this
way, avoid the obligation of immediate payment, or extend
the period of credit without the assent of the creditor."
This is in accordance with the rule that we have pronounced
sound; that is, that the debtor cannot, himself, authorize a
delay, except such as is necessarily incident to the execution of
the trust.    Such delay as is incident to the trust, the law itself
confers upon the trustee; the expression of it in the assignment
is mere surplusage, and adds nothing; and this is the clear
distinction that the court seems to have established.    What
power, in the instrument, is left to the legal discretion of the
trustee, the courts, by law, can control.    While that which
is conferred by the terms of the power, and is not so subject,
is power independent of, and above the power of the court.
It is to be remarked, in this case of *Dunham* v. *Waterman*,
that SELDEN, J., who delivered the opinion of the court,
held, also, to the opinion that an insolvent's assignment may
be void for expressly vesting in the assignee a discretionary
power which might be legally exercised by him, in the
absence of such a provision, under his general responsibility
as a trustee, and subject to the control of the courts;" but it
does not appear that this portion of his opinion was concurred
in by any other of the judges, but by implication; they did
not concur, as will be seen in the vote given by them at the
end of the case.

The case of *Jessup* v. *Hulse* (21 N. Y., 168), a still later
case in this court, it seems to me, from the note of the case,
as well as from the argument in the opinion, is decisive of

the case before us.   The authority in that case was conferred
in these words :   "To sell, dispose of and convey the said
real estate and personal property, *at such time or times,* and
in such manner as shall be most conducive to the interests of
the creditors of the said party of the first part, and convert
the same into money as soon as may be consistent with the
interest of said creditors."   This was held to be a valid
assignment, and that the trustee derived no independent discre-
tion by force of the deed, if valid, not given by operation of law.
Though the language in that case is not identical with the
case before us, I am not able to distinguish between them in
effect.   That case authorized the sale to be made "*at such
time or times as should be most conducive to the interest of
the creditors,*" of which time he of necessity must judge; the
case before us is "*within such convenient time as to him may
seem meet.*"   I cannot conceive of a clear rule that can be
laid down and established by the court as such rule upon a
discrimination between the two cases.   "Within such conven-
ient time as to him shall seem meet," does not, in my opinion,
necessarily imply in this more than in that case, that the assignee
may delay, or that the assignor contemplated the illegal act
of hindering his creditors, but that the words in the power
may be satisfied by such fair construction as shall sustain it,
and that the discretion given is to be exercised within legal
limits.   I should have had no doubt upon this question, but
for the intimation of SELDEN, J., in the case last above cited,
that the two cases of *Woodburn* v. *Mosier* (9 Barb., 255), and
*Murphey* v. *Bell* (8 How. Pr., 468), were cited with appro-
bation by this court in the case of *Brigham* v. *Tillinghast* (3
Kern., 215.)   This intimation of approbation in that case,
and a more than intimation of the learned judge in his remarks
in *Jessup* v. *Hulse,* implies an indorsement of the cases of
*Woodburn* v. *Mosier,* and *Murphey* v. *Bell,* as authority.
The reference, however, of the learned judge, to the case of
*Brigham* v. *Tillinghast,* as an approval of them, is, I think,
an error.   Those cases were there cited, it is true, but not
as authority in regard to the construction to be given to
the language of an assignment, but merely as holding to the

principle that an assignee could not authorize delay in a sale. For the purpose for which they were so therein cited, they are doubtless sound, and are in harmony with all the authorities. These cases were also cited in the case of *Kellogg* v. *Slawson*, but not in those, as I understand it, with approval or otherwise, but merely to distinguish them from the case then under consideration. It now becomes necessary, I think, directly to determine whether *Woodburn* v. *Mosier*, and *Murphey* v. *Bell*, are to be regarded as authority upon the question before us in this case. If the rule laid down in those cases is sound, the judgment in this case should be reversed, for the language of the power contained in the assignment in this case is identical with the first of those cases, and in effect is so with the other. The referee in this case doubtless regarded them as authority. It is with the view to obtain a decision here which shall settle this conflict, that I have collected and arranged the several cases referred to in this opinion. It is time that this apparent conflict of cases and confusion of rules which seem to be misleading the profession and courts should be settled. It appears to me that the case of *Jessup* v. *Hulse*, divested of the apparent indorsement of the two cases above referred to, controls the case before us and requires its affirmance, but if that case is to be understood to decide that the two cases referred to are authority, then the judgment in this case should be reversed. I am of opinion that the construction given to the assignments in the cases of *Woodburn* v. *Mosier*, and *Murphey* v. *Bell*, have been overruled in the later cases, and that those cases are not authority upon the question of construction arising from the terms of those assignments. I am the more confirmed in this opinion by the last reported case in this court on the subject of assignments. (*Campbell* v. *Woodworth*, 24 N. Y., 304.) It was there held that an *express* provision giving to the assignees (one of them being a lawyer) "a just and reasonable compensation for labor, time and services, and attention in the business of the trust, was to be interpreted as meaning no more than the commissions fixed by law. Such rule of interpretation applied to this case would require an affirmance of the judgment.

. The second and third grounds upon which the referee held the assignment void may be examined together. . The first is, that the assignee may retain sufficient moneys to pay all such debts and liabilities as may be due and owing from the assignor, and on which, or for which, the said assignee is or may be hereafter, or become liable as indorser or surety. The second ground is similar in relation to one Crane, a creditor provided for in the assignment. The argument is, that under these provisions in the assignment, the assignee and Crane are authorized to assume liabilities upon any of the assignor's notes or obligations, after the date of the assignment, and thus are empowered to create preferences among the creditors. As between the assignor and assignee, there may be some latent ambiguity on the face of this assignment, that would authorize the admission of evidence to explain, but as between the assignee and the creditors of the assignor, I can see no authority in the instrument in terms, or by necessary implication that creates the authority alleged. Such is not the fair and reasonable construction of it. The first part of the provision clearly relates to existing or matured debts and liabilities, and next, for such contingent liabilities as surety or indorser, where the liability may hereafter become absolute by proper protest, notice or otherwise, but in relation to the liabilities, either absolute or contingent, the instrument must be construed as speaking in the present tense, and it fixes the limit to the assignee about $5,000, and to Crane, about $1,500. I think the referee was in error in holding these objections to be good, and that this judgment should be affirmed.

Judgment affirmed.