## J. B. Mattison et al. v. Max Judd et al.

1. **Assignment for Creditors.** *Powers of trustee. Replenishing stock.*

   An assignment by an insolvent storekeeper for the benefit of his creditors is not rendered fraudulent on its face by power in the trustee to make such small purchases of goods as will better enable him to sell the stock on hand to the best advantage of the beneficiaries.

2. **Same.** *Discretion. Modes of sale.*

   In such instrument the trustee may be empowered to dispose of the stock in lots, at auction or in due course of trade, at discretion, for the speedy termination of the trust, consistently with the interest of creditors.

3. **Same.** *Lawyer's fees.*

   He may be authorized to pay proper lawyer's fees for preparing the assignment and maintaining it when assailed, but not fees for which the grantors might thereafter become liable in litigation growing out of the assignment.

4. **Same.** *Construction. Ambiguous powers.*

   If a power is susceptible of two constructions, one of which will render the assignment legal and the other illegal, the former will be adopted in order to uphold its validity according to the maxim *ut res magis valeat quam pereat.*

5. **Same.** *Fraud in fact. Offer to compromise.*

   The grantor's offer to compromise with his creditors after the execution of the assignment is a circumstance to be considered by the jury, but it is erroneous to instruct them that from that fact they may infer that the deed was fraudulent.

6. **Same.** *Instruction. Evidence.*

   Misdescription of a preference as for the benefit of an estate, of which the grantor is administrator, should not be charged to make the deed fraudulent, if the evidence shows that the debt is due adult heirs of another estate, and that he has no interest in either.

Appeal from the Circuit Court of Marshall County.

Hon. J. W. C. Watson, Judge, did not sit in this case, but Hon. J. A. Green presided by interchange.

Upon a plea in abatement of an attachment by the appellees against the appellants, it was proved that J. R. McCarroll, one of the latter, was a partner in the firm of Mattison & McCarroll, storekeepers, who, when insolvent, made the assignment described in the opinion, and was also adminstrator of his father's

estate, in which, however, he had previously sold his interest; that the preferred debt, described in the deed as due that estate, was in fact for money belonging to his mother's estate, loaned the grantors by her adult heirs, and also that soon after the assignment the firm wrote to their unpreferred creditors, stating their condition, and proposed, by way of compromise, to pay twenty-five cents on the dollar, which was the extent of their ability. For the appellees, the jury were instructed: — (1) that if J. R. McCarroll, one of the firm of Mattison & McCarroll, and one of the makers of the assignment, was at the time the administrator of his father's estate, a reservation in the deed of a preference to that estate might be regarded by them as a benefit reserved to himself, and, if they so believed, such reservation would render the assignment void; (2) that if the defendants soon after the assignment notified their unpreferred creditors thereof, and offered to compromise with them by paying less than the face of their claims, this was a circumstance from which the jury might infer that to force creditors to this sacrifice was one purpose in making the assignment, and, if so, they might further infer that there was an intent to hinder and delay creditors, and if they so believed they should regard the deed as void, and find for the plaintiffs; (3) that the deed of assignment was void upon its face for reasons in law, and the jury should find for the plaintiffs. There was a verdict and judgment sustaining the attachment, and, as the debt was not denied, judgment therefor.

*Featherston & Harris*, and *C. B. Howry*, for the appellants.

The debt mentioned as due the estate of one of the grantors' father was due the heirs of his mother. It was a misdescription and did not vitiate the deed. Burrill on Assignments, §§ 134, 146, 176. This grantor had disposed of his interest in his father's estate. As there was no evidence to which the instruction upon this point could apply, it should have been refused. The charge concerning the proposal of compromise was likewise erroneous. If the assignment was valid when made, it could not be affected by the grantors' subsequent conduct. *Farmers' Bank* v. *Douglass*, 11 S. & M. 469; *Summers* v. *Roos*, 42 Miss. 749. They could offer a compromise at any time without prejudicing their rights. The deed is not void *per se*. The entire instrument

must be considered, not detached sentences, and if a clause will bear two constructions, a legal and an illegal, the former should be adopted. *Townsend* v. *Stearns,* 32 N. Y. 209 ; *Benedict* v. *Huntington,* 32 N. Y. 219 ; *Riley* v. *Vanhouten,* 4 How. 428 ; *Merrill* v. *Melchior,* 30 Miss. 516 ; *Brown* v. *Freeland,* 34 Miss. 181, 214 ; *Wilkins* v. *Riley,* 47 Miss. 306, 313 ; *Richardson* v. *Marqueze, ante,* 80. Counsel fees for advice about the instrument and its preparation are properly secured. *Arthur* v. *Commercial Bank,* 9 S. & M. 394 ; *Mead* v. *Phillips,* 1 Sandf. Ch. 83 ; Burrrill on Assignments, §§ 144, 230, 417 ; Hill on Trustees, 551 ; Perry on Trusts, c. 30. The clause directing the modes of sale is unobjectionable. *Montgomery* v. *Galbraith,* 11 S. & M. 555 ; *Richardson* v. *Marqueze, ante,* 80 ; Burrill on Assignments, §§ 220, 225. Such a trustee as this one should be empowered to make small purchases in order to sell the old stock to the best advantage. *Marks* v. *Hill,* 15 Gratt. 400 ; *Rindskoff* v. *Guggenheim,* 3 Cold. 284 ; *Arthur* v. *Commercial Bank,* 9 S. & M. 394, 432 ; Burrill on Assignments, § 212. For the charge that the deed was fraudulent on its face, the verdict should be reversed. *Joseph* v. *Levi,* 58 Miss. 843.

*W. S. Featherston* and *C. B. Howry,* on the same side, argued orally.

*L. Johnson,* for the appellees.

The deed was void on its face. Preference of the estate benefited the administrator, who had assigned his interest, by increasing his commissions and protecting his sureties from liability for the money. *Thompson* v. *Furr,* 57 Miss. 478. Authority to continue the business and keep up the stock implies indefinite duration and sales on credit, either of which is fatal. *Dunham* v. *Waterman,* 17 N. Y. 9 ; Burrill on Assignments, §§ 223, 379 ; Bump Fraud. Con. 408. Exceptions must be for extraordinary reasons apparent on the face of the deed. *Arthur* v. *Commercial Bank,* 9 S. & M. 394 ; *Farmers' Bank* v. *Douglass,* 11 S. & M. 469 ; *Marks* v. *Hill,* 15 Gratt. 400. Provision for counsel fees would alone avoid the assignment. Burrill on Assignments, § 230 ; Bump Fraud. Con. 356 ; 2 Kent Com. 535. The fees were for defending the assignment, and immediately after it was drawn the grantors proposed a compromise, which demonstrated their purpose. They are presumed to have intended

the natural results of their acts, and circumstances showing fraud are of greater weight than their denials. *Petrie* v. *Wright*, 6 S. .& M. 647 ; *Harman* v. *Hoskins*, 56 Miss. 142 ; *Roach* v. *Brannon*, 57 Miss. 490. If the charge declaring the deed void *per se* was omitted, the evidence showing fraud in fact sustains the verdict, which will therefore stand. *Duncan* v. *M'Neill*, 31 Miss. 704 ; *Kelly* v. *Miller*, 39 Miss. 17.

CAMPBELL, J., delivered the opinion of the court.

The Circuit Court instructed the jury that the deed of assignment was void on its face. The several provisions of the instrument, which, it is said, make that instruction proper, are : 1. The direction that the trustee " shall sell and dispose of in due course of trade said goods, wares, and merchandise at discretion, or in lots, or at auction, if deemed most advisable by him for the speedy determination of the duties herein imposed, consistent with all creditors' interests." 2. " The said Dancy (trustee) shall have power (in the interest of the creditors herein named, at his reasonable discretion) to make such small purchases of goods as will the better enable him to sell the stock on hand to the best advantage of the creditors." 3. " In the exercise of the duties imposed upon him by the provisions of this deed, the said trustee shall have the power and he is hereby directed to pay all such reasonable counsel fees as are just and proper against the grantors herein in the matter of this conveyance, and concerning the matter involved in this assignment."

Our interpretation of the first of the several provisions objected to is, that it empowers the trustee to sell the goods by retail, or in lots, or at auction, as he may consider advisable. It is the mere expression of what the trustee could do if the conveyance were silent in this respect. It is not an attempt to provide for the continuance of the business of the grantors as they had carried it on. The " due course of trade " may be fairly construed as having reference to the mode of selling by parcels instead of by " lots." We find no fault with this provision.

The third clause of the deed, as given above, is ambiguous, and of doubtful interpretation. It may have been designed to

direct the trustee to pay out of the trust property counsel fees which the grantors might thereafter become liable for in any litigation growing out of the assignment, or it may mean that the fee for the conveyance and for maintaining it, if assailed by proceedings against the grantors, were to be paid by the trustee. If the former is the meaning, it is illegal, and avoids the instrument. If the latter is the true interpretation, it is free from objection, for it was allowable for the grantors to secure the compensation of counsel, who served them in making the assignment, just as they could secure any other creditor; and the direction to the trustee to pay any fees which might accrue against them " concerning the matter involved in this assignment," was probably no more than to direct him to pay just and proper counsel fees for defending his trust. If any assault should be made on the assignment through the courts, and fees were incurred in resisting it, and the assignment was upheld, the fees would be properly paid out of the trust fund; but if the assignment were subverted, no charge could be made against that fund for fees incurred in the effort to maintain the assignment. Therefore the direction to pay fees against the grantors, " concerning the matter involved in this assignment," is harmless to creditors. The whole expression may be no more than a pleonasm to express the idea that the just and proper charge of counsel for services about the assignment was to be paid. We do not know what it means, and must solve the doubt in favor of the validity of the instrument, with respect to this clause of doubtful interpretation, in accordance with the familiar rule of construction expressed by the maxim *ut res magis valeat quam pereat.* A presumption of an intent to defraud is not to be indulged, but the contrary is the legal intendment, which must prevail until it is overcome by reasonable certainty that the thing complained of is such as the law condemns. It is only when the authority is express to do an illegal act that the instrument will be held void. Bump Fraud. Con. 359; Burrill on Assignments, § 421. The court must be able to say that the power conferred is clearly fraudulent before it can properly condemn an instrument for containing it. The court is not to be astute to discover grounds on which to condemn assignments for creditors, but is rather to uphold them, unless they are

plainly vicious in their terms. *Townsend* v. *Stearns*, 32 N. Y. 209 ; *Benedict* v. *Huntington*, 32 N. Y. 219.

This brings us to consider the legal effect of that clause in the conveyance which empowers the trustee " to make such small purchases of goods as will the better enable him to sell the stock on hand to the best advantage of the creditors." Any contrivance of the debtor to have his business carried on by another for the purpose of making profit out of it, while creditors are postponed in the realization of their demands out of the property assigned, is condemned by law, except in certain states of case exceptional in their character, and where the continuation of a business is necessary to make articles salable, as, for instance, in case of a manufacturing establishment with raw materials on hand and articles in process of completion, or in case of a plantation and equipments and a growing crop or the like ; and even as to the exceptional cases, the decided cases are not harmonious. Burrill on Assignments, §§ 212, 213, 214, 396. The reason why a direction to continue the business of the debtor is condemned is that it is inconsistent with the rights of creditors, who are thus deprived of their just right to enforce their claims against the property of their debtor for an indefinite and uncertain period, while the property, professedly devoted to the payment of creditors, is put to the hazard of the business in which it may be employed, without their consent, and beyond their control; and that such a course is likewise inconsistent with the nature and professed object of an assignment for the benefit of creditors. Therefore, where the instrument of assignment contemplates a continuance of the debtor's business, as it was carried on before the assignment, it is to be held illegal and void by the concurrence of the adjudged cases. Whether a stipulation that the trustee may make such purchases of goods as will better enable him to dispose of the goods assigned will cause an assignment to be annulled has been differently decided. The propriety of such a provision has been affirmed in Virginia and Tennessee. *Marks* v. *Hill*, 15 Gratt. 400, lately reaffirmed in *Williams* v. *Lord*, The Reporter (1881), 759 ; *Rindskoff* v. *Guggenheim*, 3 Cold. 284, cited without criticism in *Tennessee National Bank* v. *Ebbert*, 9 Heisk. 153. In England the distinction taken seems to

be that where it is an express purpose to carry on the business of the debtor it will make the assignment void, but where power to continue the business is subsidiary to the purpose to wind it up with greater advantage to creditors it is valid. *Janes* v. *Whitbread*, 11 C. B. 406. This appears to us to be the true distinction to be applied to a power conferred on the trustee to replenish stock to the extent necessary to enable him to dispose to the better advantage, for the promotion of the interest of creditors, of the goods assigned. There is no inconsistency in this with the nature and object of an assignment, nor with the just rights of creditors. It is not calculated to produce any delay, but rather to facilitate a speedy as well as profitable disposition of the goods assigned. It is not in hostility to creditors, but for their advantage. It is not for the benefit of the debtor, but of the creditor, and it is legitimate for the debtor to desire and thus provide that means may be used to cause the goods devoted to creditors to bring the best possible price ; not to delay a winding up of his affairs, but as a means to facilitate it, on the most advantageous terms for the benefit of creditors. The mere liability of such a power to be abused by the trustee is not an argument to condemn it. All the powers vested in a trustee are liable to abuse, and the same safeguards against it, and remedies for it, through the intervention of the courts, exist in reference to this power as to any other with which a trustee may be clothed. It is a just exercise of power by a debtor, assigning his stock of goods, to authorize the assignee for creditors to make a discreet use of the trust fund to the extent found necessary to make it available to the purpose of the trust, where this power is manifestly not to hinder or delay, but to speed the advantageous sale of the goods. The discretion conferred on the trustee in such case is subject to be controlled by the courts, as in reference to anything else. It must be supposed it would be wisely used, and, if so, it would be in many instances highly beneficial to creditors. In this case the power to make purchases is cautiously worded and carefully limited, so as to manifest unmistakably the purpose to make its exercise in the discretion of the trustee a means to the paramount end of winding up the business assigned on the most advantageous terms for the interest of the creditors. It is not

*required* that the trustee shall make any purchase. He is *authorized* merely. It is left to him to determine, with a view to the interest of creditors, and his power is limited to such *small purchases* as will better enable him to sell the stock on hand to the best advantage of creditors. Without such power in the instrument the trustee would take the risk of any purchase, however advantageous he might deem it. The power would not exist if not conferred, but we think it is a proper one to be conferred, where it is plainly ancillary to the advantageous appropriation of the goods of the debtor to the use of creditors, and is not a device for some other purpose. The fact that the instrument of assignment contains such an authorization to the trustee does not make it fraudulent on its face. The third instruction for plaintiffs below was therefore improperly given.

The second instruction for the plaintiffs is erroneous in telling the jury that the proposition made by the appellants to creditors, after making the assignment, to compromise with them by paying a sum less than their demands, was a circumstance from which it might infer that the deed was void, as intended to delay and hinder creditors. It was a circumstance to be considered by the jury, but it was wrong to say that it justified the inference which would condemn the assignment. The instruction announces the value of this circumstance, and estimates it too highly. It was not for the court to tell the jury what inference this circumstance warranted, but it should have been left for the jury to weigh it and fix its value as part of the evidence to make a verdict. The first instruction for the plaintiffs below is erroneous. The fact that McCarroll, one of the assignors, was administrator of the estate of John R. McCarroll, deceased, was disclosed by evidence *aliunde*, and by similar evidence it is abundantly shown that the preference made by the assignment in favor of the estate of said decedent was not the reservation of any benefit to McCarroll, the grantor, in the assignment. The fact on which the instruction is based, and the harmlesness of it, are both shown by evidence *dehors* the deed. The one neutralizes the other.

*Judgment reversed and new trial awarded.*