Drucker & Brother *vs.* Wellhouse & Sons.

### DRUCKER & BROTHER *vs.* WELLHOUSE & SONS.

| 82 | 129 |
|----|-----|
| 92 | 554 |
| 82 | 129 |
| 95 | 530 |
| 99 | 542 |
| 82 | 129 |
| 100 | 226 |
| 82 | 129 |
| f111 | 79 |
| f111 | 82 |

1. Though a firm or partnership is not a person, it is a legal entity, and for some purposes, is recognized as a *quasi* person having powers and functions exercisible by one of the partners severally or all of them jointly. It may be a debtor or a creditor within the meaning of a statutory enactment.

2. Statutes which relate to voluntary assignments by "insolvent debtors" for the benefit of creditors, and require sworn schedules of assets and creditors to be prepared and attached to the deed or in-. strument of assignment by "the person, firm or corporation " making such assignment, and provide that "in case of assignments by firms" the required oaths may be made by any member of the firm, assume the right of insolvent firms to assign the partnership property for the benefit of their creditors, though the partners themselves as individuals may be solvent. It follows that the individual property of the partners respectively need not be assigned in order to render the assignment valid.

3. Where the schedules required by statute are in fact attached to the deed of assignment and there is no reason to conclude or even suspect that they were not attached at the time the assignment was executed, failure of the writings to declare expressly on their face that they were then attached, is of no consequence.

4. That one of the preferred debts was a due note payable to the attorney who drafted the assignment, and was given to him by the firm "for services rendered in drawing this deed of assignment and for advice and counsel in reference thereto, and services to be rendered hereafter for the purpose of protecting and upholding this assignment," does not render the assignment void *per se*. If there was actual fraud, the fraud is matter for proof *aliunde;* and if no fraud was intended, but the amount of the note is more than the services rendered and to be rendered are worth, or if the assignee, should not accept the attorney as his counsel in behalf of the cred. itors, or should not need his services, a proper deduction from the amount can be made, and the note be left to stand good against the assets for the balance only.

November 9, 1888

Partnership. Persons. Debtor and creditor. Assignments. Insolvency. Schedules. Fraud. Attorney and client. Before Judge MARSHALL J. CLARKE. Fulton superior court. September term, 1888.

Reported in the decision.

v 82-9

J. C. Jenkins and Malcolm Johnston, for plaintiff in error.

Weil & Brandt, *contra.*

Bleckley, Chief Justice.

1. " Partners are called collectively a firm. Merchants and lawyers have different notions respecting the nature of a firm.   Commercial men and accountants are apt to look upon a firm in the light in which lawyers look upon a corporation, *i. e.* as a body distinct from the members composing it and having rights and obligations distinct from those of its members.   Hence, in keeping partnership accounts, the firm is made debtor to each partner for what he brings into the common stock, and each partner is made debtor to the firm for all that he takes out of that stock.   In the mercantile view, partners are never indebted to each other in respect of partnership transactions ; but are always either debtors to or creditors of the firm.

" Owing to this impersonification of the firm, there is a tendency to regard its rights and obligations as unaffected by the introduction of a new partner, or by the death or retirement of an old one.   Notwithstanding such changes among its members, the firm is considered as continuing the same ; and the rights and obligations of the old firm are regarded as continuing in favor of or against the new firm as if no changes had occurred. The partners are the agents and sureties of the firm ; its agents for the transaction of its business ; its sureties for the liquidation of its liabilities so far as the assets of the firm are insufficient to meet them.   The liabilities of the firm are regarded as the liabilities of the partners only in case they cannot be met by the firm and discharged out of its assets.

"But this is not the legal notion of a firm. The firm is not recognized by lawyers as in any way distinct from the members composing it. In taking partnership accounts and in administering partnership assets, courts have to some extent adopted the mercantile view, and actions may now be brought by or against partners in the name of their firms; but speaking generally, the firm has no such legal recognition. The law, ignoring the firm, looks to the partners composing it; any change amongst them destroys the identity of the firm; what is called the property of the firm is their property, and what are called the debts and liabilities of the firm are their debts and their liabilities. In point of law, a partner may be the debtor or the creditor of his co-partners, but he cannot be either debtor or creditor of the firm of which he is himself a member.

"A member of an ordinary partnership is at law, as in commerce, the agent of the firm for the purpose of transacting its business; but he is not the surety of the firm. Every member of an ordinary partnership, however numerous the partners may be, is liable to have his property seized for a partnership debt, whether the firm has assets to pay it or not; and not only so, but the property of the firm is liable to be seized for the private debts of any of the members composing it. This non-recognition of the firm, in the mercantile sense of the word, is one of the most marked differences between partnerships and incorporated companies." 1 Lindley on Partnership, 4th ed. 207. Dicey on Parties, by Furman, 169, 183.

"Upon the same principle, namely, that the firm is not distinguishable from its members, and that the name of the firm is only a conventional name for those members, if a firm is appointed by its mercantile name to any office, *e. g.* the office of trustee, guardian or execu-

tor, the partners in the house at the time of its appointment to the office are the persons who, in point of law, are considered as filling it.     DeMazar *vs.* Pybus, and Knudson *vs.* Pybus, 4  Ves. 649.   The firm, as such, cannot hold an office, nor can rights, personal to the members of a given firm, be exercised by new members who may be introduced into it.   See Barron *vs.* Fitzgerald, 6 Bing. N. C. 201 ; E. C. L. R. 37 ; Stevens *vs.* Benning, 1 K. & J. 168."   1 Collyer Partnership, 6th ed. Wood's notes, p. 288, note.

" Partnership is but a relation ; it is not a person—it is not a legal being ; the real owners of partnership property are the partners."   *Harris vs  Visscher*, 57 *Ga.* 229.   " It is not a being distinct from the members which compose it."   *Chambers vs. Sloan*, 19 *Ga.* 84. " As among partners, the extent of the partnership is determined by the contract and their several interests. As to third persons, all are liable not only to the extent of their interest in the partnership property, but also to the whole extent of their separate property."   Code, §1888.

The foregoing quotations are more than ample to show that in contemplation of law there is no merger or fusion of the several persons composing a partnership into a common and comprehensive person including them all.   A firm adds nothing to population, and in this respect is unlike a corporation, which augments population in the legal, though not in the natural world. Still, the law does not take note, on a wide scale, of partnership as a legal entity, and regards it as a unit both of rights and obligations.   Judgment may be entered and execution issue for or against it.   Code, §§1899, 3576.   Attachment may issue against it as nonresident, *Chambers vs.  Sloan*, 19 *Ga.* 84 ; *DeLeon vs. Heller*, 77 *Ga.* 740 ; or as absconding, *Hines vs. Kimball*

*& Co.,* 47 *Ga.* 587. It may be served with process, *Peel vs. Bryson,* 72 *Ga.* 332. It may be taxed, *The Mayor vs. Hines,* 53 *Ga.* 616; and see many provisions in the session laws imposing taxes. It may be insolvent, Code, §1918; *Bennett vs. Woolfolk,* 15 *Ga.* 213; *Daniel vs. Townsend,* 21 *Ga.* 155; *Pullen vs. Whitfield,* 55 *Ga.* 174; *Anderson vs. Pollard,* 62 *Ga.* 51. It may assign its property to pay its creditors, but whether by general law a single partner can make for it a general assignment seems open to question. Bur. on Ass. §67 *et seq.;* Story Par. §§101, 310; Parsons Par. 165, 166, 400. As to restrictions on limited partnerships in the matter of assignments, see Code, §§1939, 1940. According to Parsons, (Partnership, 449,) there is a " general tendency of the law at this day to complete its recognition of a partnership as a body of itself, with its own means appointed to its own debts." In view of this tendency, which is everywhere traceable, and no less in our own local system than elsewhere, we may safely hold that though a firm or partnership is impersonal or non-personal, it is, for some purposes, in contemplation of law a *quasi* person, having powers and functions exercisible by one of the partners severally or all of them jointly. That it may be a debtor or a creditor within the meaning of modern statutory enactments, we have no question.

2. In September of the present year (1888), A. L. Drucker & Brother, the plaintiffs in error, executed a deed of assignment to Malcolm Johnston, for the benefit of their creditors. The deed was executed in the firm name, and was also signed by the partners, each in his own name. A bill was filed by Wellhouse & Sons, creditors of the firm, attacking the instrument for not embracing the individual assets or property of each of the partners, as well as the assets of the partnership.

The material question in the case is, whether the
assignment was valid, although it conveyed the part-
nership assets only. Two statutes are applicable to
the subject: first, the act of 1881, (acts 1880–81, p.
174; code–addenda, §§ 1953, d, e,) which declares
that, "in all cases of voluntary assignment by insol-
vent debtors for the benefit of creditors, it shall
be the duty of the person, firm or corporation mak-
ing such assignment, to prepare and attach to the
deed or instrument by which the assignment is made,
at the time of executing the same, a full and complete
inventory and schedule of all the assets of every kind,
held, claimed or owned by such insolvent person, firm
or corporation at the time of the execution of such deed
or other instrument of assignment, which inventory or
schedule shall be sworn to by the person making the
assignment, and in case of assignments by firms, the
oath may be made by any member of such firm, or in
cases of assignments by corporations, by the chief offi-
cer of the corporation, . . . . and no deed or other
instrument of assignment by insolvent persons, firms or
corporations, shall be valid unless accompanied by the
sworn schedule required." The other act is that of
1885, (acts 1884–5, p. 100,) which provides that, "in
all cases where voluntary assignments are made by fail-
ing or insolvent debtors for the benefit of creditors, it
shall be the duty of the person, firm or corporation
making such assignment, to prepare and attach to the
deed or instrument by which such assignment is made,
at the time of executing the same, a full and complete
inventory and schedule of all indebtedness of every kind
of such insolvent person, firm or corporation at the time
of the execution of such instrument or deed of assign-
ment, which inventory or schedule shall set forth in de-
tail the names of, the amounts due to, and the residence

Drucker & Brother *vs.* Wellhouse & Sons.

of each of the creditors of such assignor, and which such inventory or schedule shall be sworn to by the person making the assignment; and in case of assignments by firms, the oath may be made by any member of such firm, or in cases of assignment by corporations, by the chief officer of the corporation; . no deed or other instrument of assignment, by insolvent persons, firms or corporations, shall be valid unless accompanied by the sworn schedule required; . . no creditor of a person, firm or corporation making an assignment for the benefit of creditors shall be required first to reduce his debts to judgment before he shall be entitled to ask the remedial aid of a court of equity."

We think each of these statutes plainly recognizes the right and power of a firm or partnership to make an assignment for the benefit of its creditors; that in an assignment so made, the firm is the assignor, and the creditors spoken of are its creditors. Certain it is that only the assets and the creditors of the assignor are to be embraced in the schedules. The partners as individuals, not being the assignors, neither their separate property nor their separate creditors are required to be set forth. The provision enabling any one of the partners to make the requisite oath to the schedules respectively, effectively negatives the theory that anything more than firm assets and creditors was in legislative contemplation. The law could not rationally trust a single partner to make a disclosure of the individual means and liabilities of his copartners. The chancellor manifestly erred in holding that the assignment was vitiated by reason of the schedule of assets not being sufficiently comprehensive, and in appointing a receiver preparatory to breaking up the assignment on that account. Although the partners as individuals may be perfectly solvent, the firm as such may be in-

solvent; and as our ⁄law now stands, every insolvent general partnership (as to special and limited partnerships we rule nothing) can make a voluntary assignment for the benefit of its creditors.   In Auley *vs.* Osterman, 65 Wis. 118, it was ruled, that an assignment by a firm, of all the partnership property, for the benefit of the creditors of the firm, is not invalid merely because the individual property of the partners was not also assigned.   The opinion in that case makes reference to a statute of Wisconsin, but we are not informed as to the terms and provisions of the statute.   *Ex parte* Hopkins, 104 Ind. 157, was also cited to us in the argument, as ruling to the same effect; but the case was not produced, and we have had no access to it in preparing this opinion.

3. Two other grounds of attack are embraced in the bill, upon neither of which was any ruling made ·or necessary to be made by the chancellor, inasmuch as he regarded the assignment void for a reason which he supposed was decisive of all rights claimed under it.   As these grounds, however, are involved in the litigation, and were thoroughly argued before us, and as we have attentively considered them, we will, although we might decline to do so, express our opinion touching their merits.   One of them is, that taking the writings altogether, the assignment, the schedules and the affidavits thereto, it does not appear expressly and affirmatively on their face that the schedules were attached to the deed of assignment at the time the deed was executed.   Inasmuch as the schedules were in fact attached at some time, and no circumstance appears out of which could arise the conclusion, or even a suspicion, that they were not duly attached at the time appointed by the statute, to wit, at the execution of the deed, there is, as we think, no weight to be given

to the mere possibility that they may not have been attached until afterwards. As the documents appear in the record, there is every indication of regularity, and none whatever of irregularity.

4. The other ground taken and discussed is, that one of the preferred debts is a due note payable to the attorney who drafted the assignment, and was given to him by the firm for services rendered in drawing the assignment and counsel in reference thereto, and services hereafter to be rendered for the purpose of protecting and upholding the instrument. The precise description of this liability is quoted in the head-note. Whether this debt in full will be a charge upon the assets, must depend upon facts extrinsic to the assignment. That it is fraudulent does not follow as matter of inference from anything which we observe in the record before us. If no actual fraud was intended, but the amount of the note is more than the services rendered and to be rendered are worth, or if the assignee should not choose to employ the attorney as his counsel in behalf of creditors, or should not need professional services at all in their behalf, a proper deduction from the amount of the note can be made, and no injustice follow, either to the attorney or to the other creditors. We do not recognize the right of the assignor to dictate to the assignee, either as to the attorney whom he shall employ or the amount of compensation, but even if an attempt to do so has been made, it may have been an innocent mistake on the part of all concerned in it, and in that event it should not operate, and could not operate, to defeat the assignment *per se*. We were referred on the one hand to Madison *vs.* Judd, 59 Miss. 99, and on the other to Hill *vs.* Agnew, 12 Federal Rep. 230, neither of which cases is exactly in point.

Judgment reversed.