# Witcher v. Brewer & Michael.

*Trover and Case for Conversion and Loss of Horse.*

1. *Liability of partnership for torts of partner.* — If a horse is borrowed by one partner, to be used in and about the partnership business, and is lost by his negligence or other wrongful act, the owner may maintain an action against the partnership for the loss or conversion.

2. *Agency; how far question of fact.* — Generally, the question of agency *vel non* is a matter of fact, to be found by the jury; yet, when the fact of agency is proved, the court may decide whether the agency is general or special, and may charge the jury accordingly.

3. *Same; special agent.* — A special agent is one who has a delegated authority to do a single act, and any person dealing with him is bound to inquire as to the extent of his authority.

APPEAL from the Circuit Court of Lowndes.

Tried before the Hon. LUTHER R. SMITH.

This action was brought by W. F. Witcher, against R. M. Michael and W. Brewer, as partners under the firm name of Brewer & Michael, to recover damages for the loss of conversion of a horse. The complaint contained two counts: the first in case, for the loss of the horse by the defendants' negligence; and the second in trover. The evidence adduced on the trial is set out in the bill of exceptions as follows: —

"The plaintiff proved that the horse described in the complaint was his property. Quincy Martin was then introduced as a witness by the plaintiff, and testified that he was in the employment of the plaintiff, as his servant, to attend to his stock; that plaintiff did not keep horses to hire out, and he had no authority to hire or lend his horses to any one; that on Wednesday, in July, 1871, the defendant Michael came to him, and stated that he wanted to borrow a horse for two days, to go into the country, and requested him to see Mr. Witcher, and to tell him that he (Michael) wanted to borrow a horse; that he went to see Mr. Witcher, as requested, and told him that Mr. Michael wished to borrow a horse for a day or two, to go

into the country; that Mr. W. replied, ' It was all right;' ' to let him have the horse;' that Mr. Michael came the next morning, and got the horse, and that the horse was never returned. Mr. Michael was then examined, and testified that he requested said Quincy Martin to see Mr. Witcher, and ask him to loan him (Michael) a horse for two or three days; that he did not tell said Martin for what purpose he intended to use the horse; that he intended, at the time, to go to Benton, about twenty miles off, and come back on Saturday evening thereafter, so as to be back for church on Sunday morning; that he rode the horse for ten or twelve miles, when he discovered a spot of blood on his nose, but thought it was produced by a brier-scratch in nibbling the blackberry bushes by the roadside; that afterwards, before night, he discovered that the horse was sick, and stopped at the house of Mr. Lever, after riding about sixteen or seventeen miles; that he had the horse put up in the stable, and requested Mr. Lever to attend to him, and to give him what was needed; that said Lever, who was a horse-doctor, and well acquainted with the diseases of horses, and skilled in their treatment, did attend to him, and treated him for some disease; that the horse seemed no better the next morning; that he rode him about four miles, and stopped all night at Mrs. Robinson's; that he did all he could for the horse, and sought all the assistance within his reach, but did not see the horse, on either night, after he was put in the stable; that he then started home, and walked, and led the horse, until he gave out, after travelling about six miles, and died. The witness testified, also, that when he borrowed the horse he intended to ride to Benton, on business of himself and Mr. Brewer, who were partners; that Mr. Witcher had previously told him he could have a horse to ride in the country when he wanted. Mr. Lever testified that he attended to the horse while at his house, and gave all the attention that could be given. The plaintiff testified that Quincy came to him on Wednesday, in July, 1871, and told him that Mr. Michael wanted to borrow a horse for two days, to ride in the country; that he replied, ' It is all right, let him have the horse;' that if he had known Mr. Michael intended to ride the horse to Benton, he would not have lent him, when the weather was so bad as it then was.

" This was all the evidence; and the court thereupon charged the jury, that if they found, from the evidence, that the witness Martin did not correctly inform Mr. Witcher as to what Mr. Michael told him was the purpose for which he wished to borrow the horse, then said Martin, being the special agent of Michael for that single transaction, the plaintiff was bound to inquire as to his authority as such agent, and whether he had

correctly stated the purpose for which Michael wished to borrow the horse ; and that, although plaintiff would not have lent the horse if he had known he was to be ridden to Benton and back, the defendants were not responsible for the variation between what Michael told Martin to tell plaintiff and what he did tell him. The plaintiff excepted to this charge, and requested the court, in writing, to instruct the jury, that if the defendants' agent, for the purpose of borrowing the horse, represented to plaintiff (?) wanted the horse for two days, to ride into the country, the defendants are bound by what their agent said to Witcher was the purpose of borrowing the horse. The court refused to give this charge, and the plaintiff excepted to its refusal."

The charge given by the court, and the refusal of the charge asked, are now assigned as error.

JOHN ENOCHS and FITZPATRICK, WILLIAMSON & GOLDTHWAITE, for appellant.

WATTS & TROY, *contra.*

PECK, C. J. — It is insisted by appellee's counsel, that the evidence shows that the horse, for the loss or conversion of which this suit was brought, was borrowed by the defendant Michael on his own account as an individual, and that none of the evidence connected the defendant Brewer with the transaction ; and as the complaint charges the defendants with a joint liability *as partners*, there could be no recovery, on the evidence, on said complaint ; and therefore, if the court erred against the plaintiff in the charge given, or in refusing to give the charge asked, it was for this reason error without injury. An examination of the bill of exceptions shows that the counsel is mistaken as to the evidence on this subject. The defendant Michael was examined as a witness on the trial, and stated, " that when he borrowed the horse he intended to ride to Benton, on the business of himself and Mr. Brewer, who were partners." This was sufficient to charge the defendants, as partners, for the loss of the horse, if he died for the want of proper care on the part of the defendant Michael, by whom he was borrowed and used. For torts arising either from the acts or negligence of one partner, in the course of the partnership business, all the members of the firm are liable as partners. Story on Part. § 166, p. 257. From what is here said, I do not wish it to be understood that it is held no recovery could have been had, in this case, against the defendant Michael, if it had appeared that the horse was borrowed by him on his own account, and used by him in his own private business, and not in

the business of both defendants as partners. Generally, torts are regarded as several; and in an action against two jointly as tortfeasors, if the evidence shows one only to be guilty, the one proved to be guilty may be convicted, and the other acquitted. The action will not be defeated altogether by the failure to prove both defendants jointly guilty. 1. Ch. Pl. 86, 87.

This objection being disposed of, I proceed to the consideration of the errors assigned. I have carefully examined the charge given by the court, in connection with the evidence as it is stated in the bill of exceptions, and I am unable to see in it any error of which the appellant can complain, — any error by which he is prejudiced. It is insisted that the charge is erroneous, because it invaded the province of the jury by assuming that the witness Quincy Martin was the special agent of the defendant Michael, to borrow the plaintiff's horse. The said Martin was the plaintiff's witness, and was examined by him, without any cross-examination on the part of the defendants. He stated, in substance, that he was employed by plaintiff to attend to his stock; that he had no authority, as such employee, to lend plaintiff's horses; that in July, 1871, defendant Michael came to him, and stated that he wanted to borrow a horse for two or three days, to go into the country, and requested witness to see plaintiff, and tell him that he (Michael) wanted to borrow a horse; that he went as requested, and told plaintiff that said Michael wished to borrow a horse for two or three days, to go into the country; that plaintiff replied " It was all right," " to let him have the horse;" that Michael came the next morning and got the horse, and that the horse was never returned. Although, generally, the question of agency is a matter of fact, to be found by the jury, yet, when the fact of agency is proved, the court may decide whether the agency is general or special, and charge the jury accordingly. A special agent is one who has a delegated authority to do a single act; a general agent is one who is delegated to do all acts connected with a particular trade, business, or employment. Story on Agency, § 17, p. 19. The witness Martin, on the evidence in this case, was clearly the special, and not the general agent of the defendant Michael. He was simply authorized to borrow a horse for him, of the plaintiff, for two or three days, to ride into the country, or to borrow a horse for two or three days, without stating for what purpose he was to be used. In either case, the court committed no error in charging the jury that said witness Martin was a special agent, and that it was the duty of the plaintiff to inquire as to the extent of his authority.

The horse was in fact loaned to defendant Michael, for two or three days, to ride into the country. If the plaintiff had

sought to charge the defendants for the loss or conversion of the horse, because riding him to Benton, some twenty miles off, was not within the scope or purpose for which the horse was loaned, an appropriate charge should have been asked to that effect. This was not done.

As to the charge asked, we are unable to see what pertinency it has to the case, as it is presented in the record. There was no error in refusing to give it, for that reason.

The judgment is affirmed, at the appellant's cost.