## HENDRICKS *v.* MIDDLEBROOKS COMPANY.

1. A partnership is not liable to respond in damages to a person aggrieved by reason of slanderous reports concerning him circulated by one only of its members without the knowledge and sanction of his copartners.
2. A party to a contract who did not know of and contract with reference to a legal custom confined to a particular city is not in a position to successfully

assert that this custom became, by implication, a part of the contract into which he entered, whether the other party thereto may or may not have previously given recognition to such custom. In the present case, the nature and operation of the business usage referred to in the plaintiff's petition were not alleged with sufficient particularity and fullness ; nor did it contain the essential averment that he contracted with reference to this local custom.

3. That a creditor, ignoring a gratuitous promise to grant indulgence to a debtor to which he was not legally entitled, brings suit against him upon an open account for a balance claimed to be still due thereon, does not, without more, constitute a malicious abuse of legal process ; and this is so notwithstanding the creditor may knowingly sue for a greater amount than is, in point of fact, still due upon the account, provided he is not actuated by any malicious design to impair his debtor's credit or to make any other wrongful and improper use of the process.

Argued April 30, — Decided June 1, 1903.

Action for damages.    Before Judge Nottingham.    City court of Macon.    September 18, 1902.

*Hall & Wimberly* and *R. D. Feagin,* for plaintiff.

*Hardeman, Davis, Turner & Jones* and *E. P. Johnston,* for defendant.

SIMMONS, C. J.    An action for damages was brought by B. L. Hendricks against the W. G. Middlebrooks Co., a partnership, and certain individuals who were members of that firm, the plaintiff alleging in his petition that they had injured him in the sum of $5,000, by reason of the following facts :    "Between August 1st, 1901, and February 6th, 1902, petitioner [who was the proprietor of the Park Hotel, in the city of Macon] purchased from the said W. G. Middlebrooks Co. groceries to the amount of $212.51, as set forth by the pass-book of petitioner, the entries in said pass-book being made by defendants," and it being furnished to him by them on March 3d, 1902.    During the period above mentioned, he paid on his account $169.70, "leaving a balance due to defendants of $42.81, according to the said pass-book . . and according to the itemized statement of the account of petitioner furnished March 3rd by the said defendants."    On August 6th, 1901, he paid them "in full up to August 1st, 1901.    After this payment and settlement in full, petitioner made payments upon his subsequent account" with them; and "when petitioner's next bill was presented to him, petitioner demanded an itemized statement of the same of defendants, and defendants promised to render same to petitioner at once, but failed to do so.    At numerous times after

this request, petitioner frequently asked an itemized statement of his account from the said defendants, and [they] promised faithfully each time to furnish the same at once, but for some reason unknown to petitioner the defendants failed to do so." In the early part of February, 1902, they sent him "a bill (not itemized) for $86.94, which amount petitioner did not owe. Petitioner at the time owed defendants, as he has since found out from the passbook and itemized statement furnished by defendants to petitioner on March 3rd, 1902, the sum of $42.81, which amount [he] stood ready at all times to pay, and did at all times tender the same to defendants and offer to settle in full with defendants upon presentation to him of an itemized account. . . Petitioner believed at the time the said bill was rendered to him that the same was not correct, and so informed the said defendants, and again requested an itemized statement so that the amount of petitioner's indebtedness could be correctly ascertained." They promised to furnish him the statement of account called for, but again failed to do so. " Upon the continued refusal of defendants to furnish the itemized statement, petitioner finally notified the said defendants that he would stop trading with them unless the said statement was rendered him." On the 26th of February, 1902, "notwithstanding the fact that defendants had promised and agreed to furnish petitioner with the said itemized statement, [they] without warning, and in violation of their promise to petitioner to wait on him for payment until they had rendered him an itemized statement of his account, sued petitioner in the justice court of the 564th dist. G. M. for $86.94, when the said defendants well knew that no such sum was due them by petitioner." At the same time "garnishments were served upon petitioner's boarders, at the instance of the said defendants, in connection with the said suit against petitioner, both of which acts of the said defendants, viz., the filing and prosecuting of said suit and garnisheeing petitioner's boarders in connection therewith, . . was a malicious abuse of legal process." Owing to "the said willful and malicious abuse of legal process on the part of" defendants, " two of petitioner's boarders, who were paying petitioner the sum of $25.00 per month each, left petitioner," to his great injury and damage. On February 27th, 1902, "in order to have the said garnishments dismissed, and to prevent his other boarders from leaving him, petitioner paid to the said de-

fendants, under protest, the said amount claimed and sued for, viz. $86.94, and has since sued the said defendants for $44.13, the amount of overpayment according to defendants' itemized statement of petitioner's account" and the pass-book made out by them, which were furnished to him after the suit was filed and after he had paid to them, under protest, the amount they claimed was due. The above-mentioned " malicious and abusive use of legal process in the manner aforesaid was calculated to injure, and did injure and damage, your petitioner in the business in which he was then engaged, viz., that of prop. of the said Park Hotel." The defendants, "not content with their willful and malicious abuse of legal process, as above set forth, by their further illegal, willful, and malicious actions in connection with said garnishments and said suit, have further injured and damaged" him in his business as follows: One of the defendants, " C. B. Holleman, acting for the said W. G. Middlebrooks Co., and in the scope of the partnership business, went to Geo. P. Clarke and Co. and talked to Geo. P. Clarke and to S. C. Rainey, and told them that he had been forced to sue B. L. Hendricks and to garnishee his boarders in order to collect the bill that the said Hendricks owed the said W. G. Middlebrooks Co.; that he had not had a settlement with the said Hendricks in six years, although the said Holleman well knew at the time that the said Hendricks had only been prop. of the Park Hotel for a little over three years at that time, and that a settlement in full had been made by the said Hendricks on Aug. 6th, 1901, up to Aug. 1st, 1901." The report thus published by Holleman, " acting for the said W. G. Middlebrooks Co., was a willful and malicious slander against petitioner in the line of" his business, "added insult to injury, and slandered petitioner and petitioner's business. The said C. B. Holleman well knew that he, acting for the said W. G. Middlebrooks Co., had promised to render" petitioner an itemized statement of his account and to wait on him for payment until such a statement was furnished. The animus which actuated the said Holleman was further displayed by his going to one Oscar Bradley and telling him, in substance, that he (Holleman) had found it necessary to sue petitioner and institute garnishment proceedings in order to collect a bill he owed the partnership. As a " result of said suit and garnishments sued out, as aforesaid, by said defendants, and as a result of said slanderous reports put into circulation by the said C. B.

Holleman acting for W. G. Middlebrooks Co., petitioner's credit has been impaired and almost hopelessly ruined; [for] it became ex-. tremely difficult, after the aforesaid conduct of the said W. G. Middlebrooks Co., for petitioner to obtain any credit whatever," all of his "creditors became uneasy and began coming to him and began to make inquiries and to shut off their credit;" and because of this action on their part, "caused by the willful and malicious conduct of the said W. G. Middlebrooks Co., petitioner was forced to surrender his lease of the said Park Hotel, his lease still lacking two years and five months of having expired," to his great injury and damage.

To this petition the defendants demurred on the grounds, (1) that it showed "on its face that the petitioner was indebted to the defendants at the time it is alleged they brought suit against him and sued out garnishments" in connection with said suit; and (2) that the plaintiff was not entitled to recover because of the alleged reports circulated by Holleman, especially in view of the fact that at the time he made the statements set forth in the plaintiff's petition the latter was in fact indebted to the partnership.  The plaintiff subsequently offered two amendments to his petition, in one of which he alleged he had been damaged in the sum of $5.95 by reason of having to pay the costs of the legal proceedings wrongfully instituted against him by the defendants, and in the other of which he alleged that the suit which he brought against them to recover the amount of the overpayment he had made to them under protest had resulted in his favor.  This latter amendment also contained the following averments:  "It is the custom with the grocers of Macon and with the said W. G. Middlebrooks Co. to furnish an itemized statement of all accounts upon request of debtor for same.  Defendants owed a duty to B. L. Hendricks to furnish him with an itemized statement of his account before they could collect same; they obligated themselves to do so as a condition precedent to receiving payment from the said B. L. Hendricks of any amount that said Hendricks then owed the said W. G. Middlebrooks Co.  This violated obligation and disregard of duty on the part of the said defendants towards the said B. L. Hendricks, evidenced by said malicious abuse of legal process, injured and damaged" petitioner, as aforesaid.  On the hearing of the case in the trial court, his honor sustained the demurrer filed by the defend-

ants, and to this ruling the plaintiff duly excepted. Before entering upon a discussion of the various contentions upon which his counsel relied in his argument before us, it is proper to observe that the only party named in the bill of exceptions as a defendant in error is the "W. G. Middlebrooks Company," and that there was no effort on the part of the plaintiff, when the case was called in this court, to bring before it any of the other defendants below, by securing from them a waiver of service and asking leave to amend the bill of exceptions by the record, in order that they might be therein named as parties defendant.    See, in this connection, *Orr* v. *Webb,* 112 *Ga.* 806, and cases cited.    So the only question presented for our determination is whether or not the sustaining of the demurrer was, relatively to the defendant partnership, erroneous.

1. In the recent case of *Martin* v. *Simkins,* 116 *Ga.* 254, this court held that "Where a member of a partnership has a person arrested and illegally imprisoned on a charge of larceny of partnership effects, and the person so arrested sues the partnership for false imprisonment, the partnership, under the Civil Code, § 2658, is not liable for these acts of an individual partner."    The writer, who pronounced the judgment of the court in that case, took occasion to point out the distinction between it and the case of *Page* v. *Citizens Banking Co.,* 111 *Ga.* 73, in which it was decided that a partnership was liable in damages to a person who had been subjected to a malicious prosecution "instituted in furtherance of the partnership's interests and by direct authority of its members." As was then remarked, "The real question" presented for determination in the case last referred to "was whether the partnership was liable when all the members joined in the commission of the tort.    It was held, and we think properly, that in such a case a partnership was liable.    The opinion" delivered in that case "did not allude to the code section" cited above.    "It was scarcely necessary to do so, as the section did not apply to the case.    The code section applies to torts committed by one partner; in the *Page* case the tort was the joint act of all the partners.    The epitome, in the *Page* case, of the law in other jurisdictions as to torts of one partner, while correct, is not binding on this court, when we have a statute directly to the contrary."    It is apparent that the petition filed in the present case was framed upon the idea that the defend-

ant partnership was liable because one of its members, Holleman,. circulated slanderous reports concerning the plaintiff. There was no allegation that the other partners had anything to do with the circulation of these false reports. True, the plaintiff undertakes to say that Holleman, in making the slanderous statements complained of, was acting within "the scope of the partnership business;" but this assertion is properly to be regarded as the expression of a bare conclusion of law — and an erroneous one at that. As to the promises made to the plaintiff with regard to rendering him an itemized statement of his account and waiting on him for payment until such a statement was furnished him, and as to what occurred in connection with the legal proceedings instituted against him, the allegations upon which the plaintiff relied for a recovery are, we think, to be taken as meaning that all of the members of the partnership had knowledge that these promises had been made, but nevertheless gave their sanction to the bringing of suit against the plaintiff and having summons of garnishment served upon his boarders. We shall therefore deal separately with this branch of the case.

2. In the Political Code, § 1, par. 4, it is expressly declared that "The custom of any business or trade shall be binding only when it is of such universal practice as to justify the conclusion that it became, by implication, a part of the contract." A mere local custom or business usage which springs up in a particular city is not, therefore, "binding except upon those who have recognized it in their own transactions and thus adopted it for their own dealings." *Miller* v. *Moore*, 83 *Ga.* 685. As to one who has never recognized the existence of such a custom, his assent thereto can not reasonably be inferred, unless it affirmatively appears that he had knowledge thereof at the time he contracted. *Kelly* v. *Kauffman*, 92 *Ga.* 105; *American Sugar Co.* v. *McGhee*, 96 *Ga.* 27; *Horan* v. *Strachan*, 86 *Ga.* 408. And it necessarily follows that unless he did in fact have such knowledge, and actually contracted with reference to such custom, he is not in a position to assert that it became, by implication, a part of a contract into which he and another entered, whether the latter had or had not, in prior dealings with others, given recognition to the custom. *Sugart* v. *Mays*, 54 *Ga.* 554. This is so for the simple reason that to so assert would do violence to the real truth of the matter. As has been seen, the plaintiff alleged

that "It is the custom with the grocers of Macon and with the said W. G. Middlebrooks Co. to furnish an itemized statement of all accounts upon request of debtor for same." He did not, however, undertake to say that he contracted with reference to this alleged local usage, or that he had any knowledge of the same at the time he bought goods from that firm, or even that this custom was in existence at that time. Furthermore, the plaintiff did not allege, as matter of fact, that under this custom no account could fall due until after an itemized statement thereof was duly furnished to the debtor, or that the operation of this custom was such that the furnishing of an itemized statement of goods purchased was a condition precedent to the right of the creditor to demand and collect the purchase-price from the debtor. For aught that is alleged to the contrary, the grocers of Macon simply follow a common practice pursued by merchants generally of furnishing, purely as a matter of grace and not of right, itemized statements of account to such of their customers as claim not to be posted with regard to the obligations they have assumed, and request information which their creditors are under no legal duty to furnish, often with no other end in view than to secure indulgence to which they are not entitled. Certainly it can not be held, as matter of law, that a debtor is under no duty of keeping himself informed as to the kind, quantity, and price of goods he purchases on credit from another, but that the latter is bound to furnish all necessary information in this regard, and has no standing in court unless he has, before making demand for payment, fully complied with this obligation on his part. A custom which imposes upon a merchant any such remarkable obligation, as a condition precedent to collecting an account against a customer, should be specifically and unequivocally alleged, when relied on as constituting one of the essential features of a contract. The allegations set forth in the petition now before us, in so far as they relate to the custom of Macon grocers, fall far short of being sufficiently explicit and comprehensive. Indeed, the petition, as originally framed, contained the unreserved admission that at the time suit was instituted by the defendants against the plaintiff, he was due them on open account to the amount of $42.81; and though one of the grounds of the defendants' demurrer was based upon this fact, yet the plaintiff did not attempt, by way of amendment, to retract this admission. That he actually

owed the defendants that amount at the time they sued him must, therefore, be taken as conceded.

It is pertinent to remark, in this connection, that while the defendants, for the purposes of demurrer, admitted all the *facts* set forth in the plaintiff's petition, they by no means accepted as correct any of the mere conclusions he drew therefrom. In the absence of an unequivocal averment that, in point of fact, he knew of and contracted with reference to a local custom which imposed upon Macon grocers the obligation of furnishing to each customer "an itemized statement of his account, before they could collect same," the plaintiff's bare assertion that the W. G. Middlebrooks Co. "owed a duty to" him to render such a statement before instituting suit, amounts to nothing more than the expression of an opinion on his part concerning their legal obligations in the premises. Unless he entered into a contract with them under the terms of which they were legally bound to furnish him with an itemized statement of his account, he was not entitled thereto, notwithstanding they may have been in the habit of furnishing such statements to other customers whenever called on to do so. See *Haupt* v. *Insurance Co.*, 110 *Ga.* 146, and authorities cited. Possibly the plaintiff may have meant to aver that because the defendants had faithfully promised him to furnish the statement requested, and to wait on him for payment until they had done so, their fulfillment of this promise was a condition precedent to receiving payment or bringing suit upon the account. We shall accordingly deal with this phase of the case.

3. If a creditor contracts with his debtor not to enforce his claim within a given time, but nevertheless subsequently brings suit thereon, the debtor is entitled to recover damages for any "actual injury occasioned him thereby, without alleging malice or want of probable cause." *Juchter* v. *Boehm*, 67 *Ga.* 534. In such a case, the person aggrieved has a right to sue because of the breach of contract. *Porter* v. *Johnson*, 96 *Ga.* 147. But where a creditor, without consideration, promises to grant indulgence to his debtor, a mere failure on the part of the former to live up to his gratuitous undertaking will not give rise to a cause of action. *Marable* v. *Mayer*, 78 *Ga.* 710. Nor can an action to recover damages for the bringing of a suit and the suing out of summons of garnishment in connection therewith be maintained unless malice and want of probable cause

be alleged and proved.    *Wilcox* v. *McKenzie*, 75 *Ga.* 73.    "An action for malicious abuse of legal process will lie where legal process has been employed for some object other than that which it was intended by law to effect;" and in "such an action it is not necessary to allege want of probable cause.    The malicious use of legal process may give rise to an action, where no object is contemplated to be gained by it other than its proper effect and execution. In such case it is necessary to show malice and want of probable cause."    *Porter* v. *Johnson*, supra.    If the petition filed in an action of the nature last referred to simply contains an averment that the plaintiff suffered damages by reason of being compelled to defend a suit brought against him without cause, his pleadings are fatally defective, in that he fails therein to allege that such suit was brought maliciously as well.    *Hyfield* v. *Bass Furnace Co.*, 89 *Ga.* 827.

The action with which we are now dealing sounds in tort, and is in no sense a suit to recover damages for an alleged breach of contract.    The plaintiff admits that he was indebted to the defendants in a specified amount at the time they brought suit against him, and no consideration is shown for the promise they made to wait on him for payment until he was furnished an itemized statement of his account.    This being so, neither this suit nor the garnishment proceedings in connection therewith can properly be said to have been instituted wholly without cause.    The plaintiff makes the charge that "the filing and prosecuting of said suit and garnisheeing petitioner's boarders in connection therewith . . was a malicious abuse of legal process," which resulted in great injury and damage to him.    However, it is to be noted that he alleges but a single fact in support of this charge, viz.: that the defendants well knew at the time they brought suit that he was not indebted to them to the amount of $86.94, for which sum they asked judgment.    Nor is there any pretense on his part that any of the defendants, save Holleman, acted maliciously in the matter with a view to injuring his credit, causing his boarders to leave him, or accomplishing any other wrongful or illegal purpose.    So the question at last is:    Can the plaintiff be permitted to claim and recover damages, either punitive or actual, simply because the defendants, knowing he owed them but $42.81 on account, brought suit against him for $86.94, and declined to dismiss this suit or the garnish-

ment proceedings unless he paid them this latter amount? We think this question should be answered in the negative. Had the plaintiff defended the action, instead of paying their unjust demand "under protest," full opportunity would have been afforded him of showing what amount was actually due and unpaid. It would be to establish a dangerous precedent to hold that the bringing of an action to recover a sum in excess of that which the plaintiff knows is the full amount he is entitled to will, in and of itself alone and without regard to whether he was actuated by a desire to do more than secure a judgment for more than the defendant was justly due, give rise to an action by the latter for a malicious abuse of legal process. If the plaintiff in error were allowed to maintain his action simply, because the defendants knowingly sued him for a greater amount than that which he owed them, then we see no reason why the defendants could not, in turn, sue him on the ground that he sought in the present action to recover $5,000 when he well knew that he had not suffered damages in any such amount. It may be well to here repeat what I said in the case of *Porter* v. *Johnson*, 96 *Ga.* 148: "So far as I know, no respectable court in this country has ever held that an action will lie against a person for having brought an action against another, unless he did so with malice and without probable cause. If the law were otherwise, the ending of an action would be merely the beginning of litigation. The defendant, immediately upon the failure of the action, would begin one against the plaintiff; and if the latter action should fail, the defendant therein would in turn bring another action; and so on ad infinitum." Imagine, then, the practical effect of a decision that one having a good cause of action is guilty of an actionable wrong if he in bad faith seeks to recover more than is his just due!

The foregoing discussion covers, we think, all the points relied on by counsel for the plaintiff in error upon the hearing before us. On the whole, we are satisfied that, taking the most favorable view of the case made by his pleadings, the sustaining of the defendants' demurrer was, certainly as to the partnership, entirely proper.

*Judgment affirmed. By five Justices.*