ROGERS *v.* CARMICHAEL.

No. 11755.   JUNE 17, 1937.

*J. Wightman Bowden* and *Brown & Brown,* for plaintiff.

*Beck, Goodrich & Beck,* for defendant.

BELL, Justice. Certiorari was granted because there appears to be some confusion in the decisions regarding the liability of a partnership in such cases, and because of the public interest in having the law clarified. While several decisions by this court contain language which if followed literally would amply sustain the judgment of the trial court and the decision of the Court of Appeals, we are of the opinion that there is no authoritative ruling by this court which should bar a recovery in a case like the present. Other decisions to the same effect as the one now under review have been rendered by the Court of Appeals; but they too were induced by statements contained in decisions by this court which, though tending to support the conclusions reached, were made in cases materially different from the instant case, or which for other reasons to be pointed out are not controlling as authority. See *Corbett* v. *Connor,* supra; *Battle* v. *Pennington,* 14 *Ga. App.* 56 (80 S. E. 297). In the circumstances, it is not surprising that both the Court of Appeals and the trial courts may have been led astray in cases of this character. The following are pertinent Code provisions: "As among partners, the extent of the partnership shall be determined by the contract and their several interests in the partnership property. As to third persons, all shall be liable, not only to the extent of their interests in the partnership property, but also to the whole extent of their separate properties." § 75-103. "Each partner may examine into the affairs of the firm, and, unless otherwise agreed, have joint possession of its effects, collect and apply its assets, contract or otherwise bind the firm in matters connected with its business, and execute any writing or bond in the course of the business; at no time transgressing the rights of other partners or seeking in bad faith to evade or violate their wishes." § 75-202. "All the partners shall be bound by the acts of any one, within the legitimate scope of the business of the partnership, until dissolution or the commencement of legal proceedings for that purpose, or express notice of

dissent to the person about to be contracted with." Code, § 75-302. "An agent of the partnership is generally bound to obey each partner. If contradictory instructions shall be given by different partners, he shall not be bound to obey either, but shall act for the best interest of the partnership." § 75-309. "Third persons acting with a partner in a matter not legitimately connected with the partnership shall have no right against the firm or any other member." § 75-303. "All the partners shall be responsible to innocent third persons for damages arising from the fraud of one partner in matters relating to the partnership." § 75-307. "Partners shall not be responsible for torts committed by a copartner. For the negligence or torts of their agents or servants they are responsible under the same rules which apply to individuals." § 75-308. "The surviving partner, in case of death, may control the assets of the firm to the exclusion of the legal representatives of a deceased partner, and he shall be primarily liable to the creditors of the firm for their debts." § 75-208. "Title to personal property shall vest in the surviving partners, who have the right to dispose thereof for paying the debts and making distribution." § 75-209.

The difficulty in the present case relates to the construction of the first sentence in section 75-308, that "Partners shall not be responsible for torts committed by a copartner." This statement appears to have been placed in the Code of 1863 by the codifiers, and has been carried in the same language in all the subsequent Codes. That Code having been adopted by the General Assembly, the provision should be treated as a legislative declaration, having the force of statute (*Central of Georgia Railway Co.* v. *State,* 104 *Ga.* 831 (5) (31 S. E. 531, 42 L. R. A. 518) ; but this does not necessarily mean that a partnership is not liable for the torts of one of the partners committed within the scope of the partnership business. The statement must be given a reasonable construction; and in arriving at its meaning several considerations must be observed, including a study of cognate sections and common-law principles. In an editorial note in Michie's Code (1926), it is stated that this section is a marked departure from the rule in most jurisdictions, and does not seem to be founded on sound principle, in that it disregards entirely the well settled rule that a partner is an agent of the partnership. This, however, was to

construe the section as implying that the partnership is not responsible for torts committed by a partner in pursuance of the partnership business. The editor proceeds to illustrate the unsoundness of such a construction by stating: "And yet, if the tort is committed by an agent instead of a partner, the partnership is liable. For instance, if partners engaged in a small grocery business, should hire a driver of their delivery-wagon, the partnership would be liable to a person injured by his negligent driving. But apparently it would not be liable if a partner were driving." Section 75-309 of the Code, supra, provides that "an agent of the partnership is generally bound to obey each partner." It would be wholly illogical to say that a partnership is liable for a tort committed by an employed servant or agent in obeying instructions from a partner, and then to deny liability if the partner himself had done the very thing which he instructed the agent or servant to do. And what reason is there for saying that the partnership is liable for the fraud of one of the partners in matters relating to the partnership, and not liable for other torts arising in like manner? Again, there would seem to be even stronger reason for holding the partnership liable for a tort committed by a partner in pursuance of the partnership business than for sustaining such liability for the tort of an agent or servant, since a partner is an alter ego of the firm, usually having larger powers than a mere servant or agent. While there is no previous decision so stating in express terms, we lay it down as a truism, that, under the English common law, a partnership and each member thereof was liable for a tort committed by a copartner acting within the scope of the firm business, and that such liability was not dependent upon the personal wrong of the other members of the partnership.

The rule as thus expressed has been stated in many decisions and texts as a matter of principle; and the statements being so made regardless of statute must have been based on the common law. In Stockwell v. United States, 80 U. S. 531 (20 L. ed. 491), the United States Supreme Court referred to the rule as "familiar doctrine." That the common law was the basis of this statement will scarcely admit of doubt. Gershon v. Mendel, 37 Ga. App. 650, 652 (141 S. E. 328). We have searched among the old English cases, and find what we conceive to be conclusive

evidence that such was the rule in England on and before May 14, 1776, so as to have become the law of Georgia by the adopting statute of February 25, 1784. *Harris* v. *Powers,* 129 *Ga.* 74 (58 S. E. 1038, 12 Ann. Cas. 475). The following is a report of the decision in Attorney-General v. Burges and others, Bunb. 223, 145 Eng. Rep. 654, decided on November 29, 1726: "Upon an information by way of devenerunt for the treble value on the stat. 8 Annæ, for goods that came to the hands of the defendant, knowing they had not paid the duties; it was determined at the trial at the sittings by Lord Chief Baron Pengelly, that if several persons were concerned, either in partnership or otherwise, yet the Crown might come against any one of them for the whole penalty, it being in nature of a tort, and not a contract, as in cases of tort a subject might come upon any one concerned in the tort: and it was also resolved, that on such an information there was no necessity that the goods should be proved to come actually into his hands, if they came into his power, or into the custody of any agent of his, or to any person by his direction." In the reprint is a footnote stating that "in the case of The Attorney-General v. Carbold, Feb. 13, 1732, an information of devenerunt was tried before Lord Chief Baron Reynolds, who was of the same opinion." See also Attorney-General v. Stranyforth (Feb. 1, 1721), Bunb. 97, 145 Eng. Rep. 608. In Moreton v. Hardern, 4 Barn. & Cres. 223, 107 Eng. Rep. Repr. 1042, decided in 1825, it was held that all members of a firm of stage-coach proprietors were liable in an action on the case for the negligence of one of them who ran into the plaintiff and broke his leg. This particular proposition was treated by the court as being so thoroughly established as not to require citation. While that decision was rendered about fifty years after the date specified in the Georgia adopting statute, it is strong evidence as to what was the common law, especially since, like the case of Attorney-General v. Burges, supra, it was based solely on principle, with no authority cited. See also Ashworth v. Stanwix, 3 El. & El. 701, 121 Eng. Rep. Repr. 606, and the following early decisions by the courts of New York and Alabama, enunciating the rule in such manner as to force the inference that the common law is the origin: Champion v. Bostwick (N. Y. 1837), 18 Wendell, 175 (31 Am. D. 376); Myers v. Gilbert (1850), 18 Ala. 467. On the general subject see McIntyre v.

Kavanaugh, 242 U. S. 138 (37 Sup. Ct. 38, 61 L. ed. 205) ; Dixon v. Haynes, 146 Wash. 163 (262 Pac. 119, 55 A. L. R. 1218) ; 20 R. C. L. 914, § 126; 47 C. J. 884, § 364.

It is thus plain that the rule as stated in Attorney-General v. Burges, supra, decided in 1726, became the law of Georgia by the adopting statute, while the decisions rendered after the passage of that statute are to be considered only as additional evidence of the existence of such rule as a common-law principle. Such then was necessarily the law of Georgia before the adoption of the Code of 1863. Did the adoption of the Code result in an amendment of this law? In *Lamar* v. *McLaren*, 107 *Ga.* 591, 599 (34 S. E. 116), it was said: "Unless the contrary manifestly appears from the words employed, the language of a Code section should be understood as intending to state the existing law, and not to change it." In *Mechanics Bank* v. *Heard*, 37 *Ga.* 413, it was said of the Code of 1863, that it should be kept in mind that the codifiers had no authority to originate new matter for legislative sanction, and that it is incumbent upon any one who asserts that they went beyond their commission to prove such contention. The presumption is that in the mere adoption of the Code no change in the law was intended by the legislature. In the recent case of *Atlanta Coach Co.* v. *Simmons*, 184 *Ga.* 1 (190 S. E. 610), applying these principles, it was said by Russell, Chief Justice, that if the question of change "is left in doubt or uncertainty," "this fact alone is a conclusive reply to the proposition that a change in the law was effectuated." In *Mitchell* v. *Georgia & Alabama Railway*, 111 *Ga.* 760, 768 (36 S. E. 971, 51 L. R. A. 622), *the same rule of construction was applied as against the contention that a stated Code section adopted in codification worked a change in the common law.* See also *Clark* v. *Newsome*, 180 *Ga.* 97 (178 S. E. 386).

From what has been said, we think the proper construction of section 75-308 is that partners are not responsible for the torts of each other merely by reason of their relation as partners, and that in order for such liability to exist the wrong must have been committed within the legitimate scope of the partnership business; that is to say, the section was merely declaratory of the existing common-law rule to that effect. It is noticed that the Code employs the word "partners" and not "partnership." While it is

true that the same section goes on to state that "for the negligence or torts of their agents or servants they are responsible under the same rules which apply to individuals," this is but a mere implication that a partner is not a firm agent; whereas by other clear provisions of the law he is not only an agent of the partnership, but is in fact its alter ego, in matters relating to the partnership business. It might be argued that the adoption of such a construction is to render useless or superfluous the provision that "partners shall not be responsible for torts committed by a copartner," because even in the absence of such provision a partner would not be liable for a mere personal tort of a copartner. But what then of section 75-303, by which it is declared, "third persons acting with a partner in a matter not legitimately connected with the partnership shall have no right against the firm or any other member"? This section seems to be equally as unnecessary, because it is also true that, regardless of this provision, the firm could not be held liable for the acts of a partner not legitimately connected with the partnership business. Both of these sections appear to be merely cautionary, inserted for the purpose of preventing any possible misconception that a liability might exist solely in virtue of the partnership relation. Any other interpretation would attribute to the legislature a form of legislative contortion which can not be ascribed to that body in the absence of compelling reasons. The necessary conclusion is that the insertion of the statement that "partners shall not be responsible for torts committed by a copartner" was not intended to repeal or modify the existing common-law rule.

The conclusion just stated is directly supported by certain decisions which have been rendered since the adoption of the Code. In *Cunningham* v. *Woodbridge,* 76 *Ga.* 302, it was held that a partnership was liable in trover for the conversion of a bond by one of the partners in connection with the partnership business. The same principle was applied by the Court of Appeals in *Thompson* v. *Harris,* 7 *Ga. App.* 212 (66 S. E. 629), and in *Beasley* v. *Central of Georgia Ry. Co.,* 29 *Ga. App.* 584 (116 S. E. 227). While in the *Cunningham* case the property was converted to the use of the partnership, there is another decision by this court in which the conversion was not to the use of the partnership, and in which an action in trover was sustained. We refer to *Hobbs*

v. *Chicago Packing & Provision Co.*, 98 *Ga.* 576 (25 S. E. 584, 58 Am. St. R. 320), in which the following facts appeared: Hobbs & Tucker was a banking partnership. An owner of goods shipped them on consignment to his own order, at the same time drawing in favor of the partnership "for collection" a draft upon the person to whom the goods were intended to be delivered on payment of the draft, to which a bill of lading was attached. The bill of lading was so indorsed as to give the partnership control of the possession of the goods, and one of the partners caused a delivery of them to the drawee of the draft without requiring payment. It appears that the partnership did not receive the use or benefit of the goods, but that they were delivered to a third person, and were thereby lost to both the shipper and the partnership. The shipper brought against the partnership an action in trover, in which the jury found for the plaintiff. On review it was held by this court, that, "the wrongful delivery of the goods being an act done in a matter within the scope of the partnership business, such delivery; though made or caused to be made by a single member of the firm without the knowledge or consent of the other and only remaining member, rendered the latter liable." The goods consisted of a shipment of meat by railway from Chicago to Albany, Georgia. In the decision by this court, as delivered by Mr. Justice Lumpkin, it was said: "It seems that the meat was delivered to Ragan upon orders signed by Tucker alone, and it was therefore urged that Hobbs was not liable. Under the facts, the act of Tucker in giving these orders was really an act of the partnership. It was the same, in effect, as if he had gone to the station agent and personally directed him to let Ragan have the meat, and it is evident that the agent thus treated and regarded the orders sent by Tucker. It can hardly be doubted that the act of Tucker in causing the delivery to be made to Ragan was within the scope of the partnership business; and consequently, whether it was done with the knowledge and consent of Hobbs or not, he was in law liable. 'Each partner being the agent of the firm, the firm is liable for his torts committed within the scope of his agency, on the principle of respondeat superior, in the same way that a master is responsible for his servant's torts, and for the same reason [that] the firm is liable for the torts of its agents and servants.' 1 Bates' Law of Partnership, § 461. 'Where one partner, in a matter con-

nected with the business of the partnership, does an act to the injury of a third person, which is a tort by construction or inference of law merely, his copartner is equally liable with him for the consequences of the act.' Myers *v.* Gilbert, 18 Ala. 467. See also Witcher *v.* Brewer & Michael, 49 Ala. 119. 'Partners may be sued in an action of trover, although there was no joint conversion in fact. A joint conversion may be implied by law by consent of a partner to the acts of his copartners.' Bane et al. *v.* Detrick, 52 Ill. 20. 'Where a partner, in the course of partnership business, commits a fraud, or does acts prohibited by law, the firm is liable, although the other partners have no knowledge of such fraud or illegal act.' Tenney et al. *v.* Foote, 95 Ill. 100. 'The appropriation or misapplication by one partner of moneys or other property in the custody of the firm, within the scope of its business, or in the custody of such partner as a representative of the firm, renders each partner liable to the true owner for such conversion; and when thus in the custody of one partner, it is immaterial whether the other partners knew anything about it or not.' 17 Am. & Eng. Enc. of Law, 1070. See also *Alexander* v. *Slate,* 56 *Ga.* 478."

The conversion of the personal goods of another is a tort, and the cause of action considered in that case was so treated. Compare *Willis* v. *Burch,* 116 *Ga.* 374 (42 S. E. 718). While the decision in the *Hobbs* case mentioned no section of the Code, it can not be assumed that the learned Justice who prepared the opinion was ignorant of or overlooked the section relied on by the defendant in the present case. Furthermore, the principles there laid down can not be accounted for except on the basis of the common law. See also the discussion by Chief Justice Bleckley in *Drucker* v. *Wellhouse,* 82 *Ga.* 129 (8 S. E. 40, 2 L. R. A. 328), referring to partnership, but not in express terms to liability in tort. There are later decisions by this court in which there is language contrary to some of the statements made in the present decision, and also to the decision in the *Hobbs* case, supra. In *Ozborn* v. *Woolworth,* 106 *Ga.* 459 (supra), the sole question presented was whether or not an action for slander by a partner would lie against the partnership. While the court discussed the provision that "partners are not responsible for torts committed by a copartner," it was held, that, "in speaking slanderous words,

each member of a partnership acts for himself alone and upon his own responsibility," and that in view of the cited section he can in no sense be regarded as an agent of his copartners to utter a slander. Despite some of the broad dicta contained in that decision, it stands as authority only to the extent that the type of slander there under consideration is not within the scope of the business of such a partnership. In *Page* v. *Citizens Banking Co.*, 111 *Ga.* 73, 77 (36 S. E. 418, 51 L. R. A. 463, 78 Am. St. R. 144), it was held that a partnership is liable as such in an action for malicious prosecution, when the same is instituted in furtherance of its interests and by direct authority of its members. That decision holds nothing contrary to what has been ruled in the instant case, but in large measure lends support thereto. Since the petition, however, distinctly alleged that every act of the partner was authorized by each and every member of the firm, the court held that no decision was necessary as to whether the partnership would be liable in the absence of such express authority and direction. The previous decision in *Ozborn* v. *Woolworth*, supra, was examined at some length, and in reference thereto it was said: "In that case it was sought to hold a partnership liable for slanderous words uttered by one of the partners, upon two grounds: first, because the words were uttered in a transaction within the scope of the partnership business; and second, that the other partner after the slanderous words were uttered had ratified the same. It was properly held that the partnership was not liable upon either ground."

In *Martin* v. *Simpkins*, 116 *Ga.* 254 (supra), it was held: "Where a member of a partnership has a person arrested and illegally imprisoned on a charge of larceny of partnership effects, and the person so arrested sues the partnership for false imprisonment, the partnership, under the Civil Code [1895], § 2658, is not liable for these acts of the individual partner." This refers to the section in which is contained the statement that "Partners shall not be responsible for torts committed by a copartner." The decision was based largely upon a construction of this section, and the court seems to have held that in view of it a partnership may not in any case be held liable for a tort of one of its members unless all the members join in the commission of such act. That, however, was a decision by only five Justices, and is not binding

as authority upon this court. Moreover, much of the language used was unnecessary to the conclusion reached, since it purported to deal with torts in general, while the actual case was a claim for damages for false imprisonment. In *Hendricks* v. *Middlebrooks Co.,* 118 *Ga.* 131 (44 S. E. 835), the court again had the question of the liability of a partnership for a slander by one of the partners, and merely followed the reasoning in the decision of *Martin* v. *Simpkins,* supra. The *Hendricks* case also was decided by five Justices. It seems that there are no later decisions by this court which should be considered in this connection. While the decision in the *Ozborn* case was concurred in by all the Justices, we have seen that it dealt only with an action of slander, and that when confined to its actual facts it contains nothing which should prevent recovery in a case like the present. We might in like manner dispose of the dicta in the *Martin* and *Hendricks* cases, supra; but as to these two decisions we will say further, that, since they were not concurred in by all the Justices, nothing contained in either of them is binding upon this court as authority, and that any statement in either contrary to what is now ruled is deemed to be unsound and will not be followed.

In *Zakas Bakery* v. *Lipes,* 27 *Ga. App.* 712 (109 S. E. 537), the Court of Appeals gave what we think is a sound statement of the law applicable in cases like the one here under consideration. The case involved the liability of a partnership for negligence of its members in regard to an appliance which the plaintiff servant was required to use in the performance of his duties. It was insisted by the defendant partnership that the case was controlled by the declaration in the Code to the effect that partners are not responsible for torts committed by a copartner. The Court of Appeals said: "A partnership in the conduct of its business is a legal entity both as to its rights and in the performance of its duties to the public and to its employees, and is a legal entity as to its obligations. Partners are, in respect to the business in which they are engaged, agents of each other, and therefore one partner might be liable for the tortious acts of another *done in the usual course of business of the firm.* But neither the members of a partnership nor the partnership itself is liable for the personal, individual tort of a member, not done in the prosecution of the business of the firm, but for his own individual and personal pur-

pose. If the master is a member of a partnership by which the servant is employed, and the work in which he so takes part is within the scope of the common undertaking of the partnership, his partners are jointly liable with him for an injury caused by his negligence to the servant. If the act of negligence which causes the injury to the servant is the .act of the partnership itself as a legal entity, there can be no question but that the partnership is liable under the same rules of law as apply to individuals or corporations; and in such case this liability would extend to the individual members of the partnership. The cases cited by plaintiff in error in support of his contentions are cases in which the tort complained of was an individual tort of the partner, where it was properly held that the partnership would not be liable for the tort of one of the partners in which the other partners did not join." —referring, among other cases, to *Page* v. *Citizens Banking Co., Martin* v. *Simpkins,* and *Hendricks* v. *Middlebrooks Co.,* supra.

It appears in the instant case that the partner who actually committed the tort died before the action was brought. Whether or not such death abated the cause of action as related to individual liability of this partner or his estate, it would not affect the liability of the partnership or of the other partner, and the petition does not seek a recovery upon individual liability of the deceased member. Whether or not the petition should be construed as seeking a judgment against the surviving partner as an individual, in addition to a judgment against the partnership, and whether the surviving member or the partnership might, on paying the judgment, if any, have a remedy over against the estate of the deceased member as the actual tort-feasor, or be without such remedy for any reason, are questions which can not affect the rule as to the liability of a partnership and its members served, if any, to respond in damages to a third person who has been injured by the negligence of the partnership through one of its members. *Drucker* v. *Wellhouse,* supra; Code, § 39-117; § 75-312.

The doctrine of stare decisis has also been invoked. In *City of Atlanta* v. *First Presbyterian Church,* 86 *Ga.* 730, 733 (13 S. E. 252, 12 L. R. A. 852), Chief Justice Bleckley had the following to say regarding this principle: "It has never been the doctrine of any court of last resort that the law is to be a refuge and safe

asylum for all the errors that creep into it. Indeed, the mind, private or official, which closes down upon all the errors it embraces, refusing to eject them when exposed, is no longer fit for the pursuit of truth. Courts, like individuals, but with more caution and deliberation, must sometimes reconsider what has been already carefully considered, and rectify their own mistakes. If this is to be done in any case, it would seem to be a case like the present, where a change of decision would uproot no transaction founded on the prior decision, and where the effect in the particular controversy at the bar would be simply to leave the parties where they had placed themselves by doing aright what one of them now seeks to have undone." No vested property rights could be disturbed by a decision in the present case contrary to what may have been said in previous decisions to which reference has been made. This is an action for negligence; and while even as applicable to such cases an erroneous decision, if thoroughly established, might be followed as a matter of judicial policy, yet the rule of stare decisis is usually considered as one more appropriately applied to vested property rights. It would be a strained assumption to infer that the members of this partnership entered upon such relationship because of any supposition that they and the partnership would not be liable for the torts committed by either of them within the scope of the partnership business. There is no other theory upon which an existing property right could be thought disturbed by the present decision. Furthermore, it has been shown that none of the decisions by this court contain such clear, definite, and authoritative rulings on the question now presented as to require adherence thereto, under stare decisis. As was stated at the outset, the decisions appear to be in a state of confusion; and in the circumstances the law should be clarified, and correctly so, if possible. Among the previous decisions by this court, that in *Hobbs* v. *Chicago Packing & Provision Co.,* supra, is the one most clearly in point; and it is not only earlier than those relied on by counsel for the defendant in certiorari, but it states what we consider to be the true and correct rule, notwithstanding only two Justices participated therein. The decision by the Court of Appeals in *Zakas Bakery* v. *Lipes,* supra, is to the same effect in principle. Counsel for the defendant in certiorari have seemed to suggest that to sustain the action in this

case would encroach upon the legislative function, by extending or changing the law by the process of construction. Such is not the case, however, for the reason that we are simply applying the common-law rule as adopted by the General Assembly and never changed by that body. The correction of previous misconstructions of a section of the Code does not amount to a change of the true law by the process of interpretation, and hence does not invade the legislative province.

Summary: The statement that "Partners shall not be responsible for torts committed by a copartner," by its adoption as a part of the Code of 1863 and of each of the subsequently adopted Codes, has been expressly made a part of the law of this State. The question in this case is one relating to its meaning. Properly construed, the statement means that partners are not responsible for the torts of each other merely by reason of their relation as partners, and that in order for such liability to exist the wrong must have been committed within the legitimate scope of the partnership business. Our conclusion is that the petition stated a cause of action, and that the Court of Appeals erred in affirming the judgment dismissing the petition on general demurrer. As to the propriety of suing the partnership through the surviving partner, see *Morrow* v. *Cloud,* 77 *Ga.* 114; *Huggins* v. *Huggins,* 117 *Ga.* 151 (4) (43 S. E. 759). *Judgment reversed. All the Justices concur.*