A89A1145. KAPLAN et al. v. GIBSON et al.
(385 SE2d 103)

DEEN, Presiding Judge.

On April 6, 1983, Eugene Gibson had an epidural steroid injection in the L 2-3 vertebral interspace of his lumbar spine, for treatment of his chronic low back pain. Six days later, he was admitted to a hospital for severe back pain and fever. The admitting physician noted a warm area around the L 2-3 interspace, but Dr. Jeffrey Woodward, who was the treating neurologist, did not notice that because Gibson's body was warm all over due to a high fever. Dr. Woodward considered an epidural abscess to be a remote possibility, but primarily suspected that Gibson had meningitis.

According to Dr. Woodward, in order to diagnose meningitis and devise a treatment, he attempted 4 or 5 spinal taps at the L 2-3, L 3-4, and L 4-5 interspaces. All were dry taps, so he asked a Dr. Finch, an anesthesiologist, to attempt a spinal tap. Dr. Finch attempted 4 to 5 additional taps at the same interspace, but likewise was unsuccessful. Dr. Woodward then called his partner, Dr. Gary Kaplan, who later attempted 4 to 5 unsuccessful taps at the L 2-3, L 3-4, L 4-5, and L 5-S 1 interspaces under flouroscopy. Dr. Kaplan in turn asked the assisting radiologist, Dr. Robert Walker, to try a tap, and Dr. Walker also attempted 1 or 2 unsuccessful taps at the L 1-2 interspace.

Dr. Woodward and Dr. Kaplan then contacted Dr. Alan Korsower, a neurosurgeon, to perform a cervical tap to obtain the spinal fluid and to do a myelogram to localize any abscess that may have

been present. (Dr. Korsower testified at trial that Dr. Kaplan had said nothing about the possibility of an epidural abscess, and had requested only the cervical tap.) Dr. Korsower was unable to undertake the procedure that night at the hospital because of equipment problems, but he made arrangements to transfer Gibson to another hospital early the next morning. That night, however, Dr. Korsower observed multiple puncture marks and redness and swelling around the L 2-3 interspace, and considered an epidural abscess in that area to be a possibility.

The following morning, prior to surgery, Dr. Korsower noted that Gibson had weakness of the left quadriceps and left tibia, and L 3 through L 5 radiculopathy. He also observed 25 to 30 needle marks on Gibson's back. He succeeded in getting spinal fluid by a cervical tap, and the assisting radiologist, Dr. William Lang, also made a couple of taps at the L 5, S 1 interspace and obtained fluid. Later that day, Dr. Korsower operated on Gibson's back and located and removed an epidural abscess at the L 2-3 level; he was also alarmed when he discovered a 2- to 3-millimeter-wide tear in the dura and that several nerve roots had been lacerated.

Gibson recovered from the meningitis, but because of this nerve root damage he suffered permanent neurological deficits, including (a) lack of sensation in left leg, left foot, buttocks, testicles, and penis, (b) constant pain in left leg, (c) left leg and foot weakness, and (d) impairment of bowel and bladder function. He and his wife commenced this medical malpractice action to recover for that impairment, originally naming as defendants Dr. Woodward, Dr. Kaplan, Neurological Consultants, P. C. (the professional corporation formed by Woodward and Kaplan), Dr. Finch, and Dr. Walker, but eventually voluntarily dismissed the latter two doctors. The jury awarded the Gibsons $200,000. The trial court denied the appellants' motion for judgment notwithstanding the verdict, and this appeal followed. *Held*:

1. The appellants contend that the evidence could not support the verdict because there was no evidence of partnership and no proof of causation. Concerning the issue of partnership, although it is undisputed that the appellants were members of a professional corporation, it is equally uncontroverted that the appellants held themselves out to others as partners. Dr. Woodward referred to Dr. Kaplan as his partner when he contacted Gibson's wife to get consent for the spinal tap, and Gibson's wife relied upon that representation that the two doctors were treating her husband. Dr. Kaplan referred to Dr. Woodward as his partner when he contacted Dr. Korsower to request the cervical tap. Even at trial both appellants referred to each other as partners. Under these circumstances, the evidence supported a finding of ostensible partnership. OCGA § 14-8-16.

Concerning causation, contrary to the appellants' contention, it

was unnecessary for the appellees to show precisely which doctor did what damage to Gibson's nerve roots. There was expert opinion evidence that spinal taps usually do not damage nerve roots because the nerve roots are normally free-floating and can move out of the way of the tap needle, but that an epidural abscess can bind the nerve roots in place, making it possible to damage them with a tap needle; for that reason, in addition to the reason that it could cause a meningitis, a spinal tap in an area where an abscess is suspected is absolutely contraindicated. There was also evidence that only the appellants and Dr. Finch, who attempted taps at the request of the appellants, did spinal taps at the interspaces where the abscess was located, and thus only those taps could have damaged Gibson's nerve roots. The gist of the appellees' action concerned not the technical competence with which the various spinal taps were made, but the decision to tap in an area which the appellants as treating physicians knew or should have known was the site of a possible epidural abscess. The appellees' evidence supported that theory of recovery and sufficiently showed the cause of the injury in this case.

2. The trial court instructed the jury on the doctrine of ostensible partnership, but failed to include that the liability of such ostensible partners is to persons who rely upon the representation of partnership. The trial court then instructed the jury that it must separately consider whether Dr. Woodward and Dr. Kaplan individually contributed to the injury, unless it found the existence of a partnership, in which case the appellants (including the professional corporation) could be jointly liable. The appellants contend that with these instructions the trial court erroneously charged the jury on partnership and its effect upon the requirement of proof of causation.

The trial court basically informed the jury of general partnership liability, i.e., that all the partners and the partnership could be liable for the partners' torts (if committed within the scope of the partnership.) See *Rogers v. Carmichael*, 184 Ga. 496 (192 SE 39) (1937). We do not find this error, and also do not find the trial court's omission of detrimental reliance upon the representation of partnership from the charge on ostensible partnership to invalidate a finding of partnership in this case.

3. The appellants also contend that the trial court erred in charging the jury on the liability of physicians for the acts of other physicians. The trial court initially instructed the jury that a physician is normally not responsible for the acts of another physician over whom he has no authority or control, but that a physician can be liable for another physician's acts (1) where the latter physician is subject to the control of the first, or (2) where the first physician directs a second physician to perform an act, and that request itself is negligence (as opposed to the technical competence by which the act was

done.) The trial court also instructed the jury that this charge did not apply to the assignment of the patient to Dr. Korsower, or any act taken by Dr. Korsower or Dr. Lang. We find nothing wrong with this jury charge, and, contrary to the appellants' suggestion that it foreclosed the jury from assigning some of the blame for Gibson's injury to Dr. Korsower and Dr. Lang, the latter portion of the charge referring to Dr. Korsower and Dr. Lang actually served to foreclose the jury from finding the appellants liable for any negligence it may assign to Dr. Korsower and Dr. Lang.

*Judgment affirmed. Benham, J., concurs. Birdsong, J., concurs in Divisions 2 and 3 and in the judgment only of Division 1.*

DECIDED JULY 10, 1989 —
REHEARING DENIED JULY 25, 1989.

*Love & Willingham, Daryll Love, Robert P. Monyak*, for appellants.

*Driebe & Rumsey, D. Lake Rumsey, Jr., Cohen, Pollock, Cooper & Comolli, Lawrence A. Cooper*, for appellees.